Peter Higgins, Respondent, *v.* The Western Union Telegraph Company, Appellant.

Master and Servant — Non-liability of Master for Servant's Negligence During Suspension of Relation.   A contractor for the repair of a building, including the furnishing of elevators, having placed the elevators in position, called upon a general servant of the owner of the building, whose duty it was to conduct the elevators for passengers, to operate an elevator so that a mason, in the service of the contractor, could use it as a movable platform in plastering the shaft.   The conductor, having suspended carrying passengers, operated the elevator for the mason, under the latter's direction, and while so engaged the mason was injured through the conductor's negligence.   The mason thereupon sued the owner of the building for damages.   *Held*, that a recovery against the owner, on the ground of his responsibility for the conductor's negligence under the doctrine of *respondeat superior*, was not warranted.

*Higgins* v. *Western Union Tel. Co.*, 11 Misc. Rep. 32, reversed.

(Argued January 27, 1898; decided May 13, 1898.)

Appeal from a judgment of the General Term of the late Superior Court of the city of New York, entered January 11, 1895, affirming a judgment in favor of plaintiff, entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover damages for a personal injury alleged to have been occasioned by the negligence of the defendant.

The facts, so far as material, are stated in the opinion.

*Jacob F. Miller, George II. Fearons* and *Rush Taggart* for appellant.   The relation of master and servant must be shown to exist between the defendant and the persons whose acts or omissions caused the injury before any liability can be established.   No such relation was shown between Joseph Algar, who is charged with the negligence, and this defendant, and the judgment should be reversed.   (*Engel* v. *Eureka Club,* 137 N. Y. 103 ; *Wyllie* v. *Palmer,* 137 N. Y. 257 ; *McInerney* v. *D. & H. C. Co.,* 151 N. Y. 411 ; *Butler* v. *Townsend,* 126 N. Y. 105 ; *Hilliard* v. *Richardson,* 3 Gray, 349 ; *De Forest* v. *Wright,* 2 Mich. 368 ; *King* v. *N. Y. C.*

& *H. R. R. R. Co.*, 66 N. Y. 184; 14 Am. & Eng. Ency. of Law, 745; Pars. on Cont. 101; *Gravatt* v. *State*, 25 Ohio St. 168; *Murray* v. *Currie*, L. R. [6 C. P. Div.] 26; *Olin* v. *Whitney Marble Co.*, 103 N. Y. 300; *Rourke* v. *White Moss Colliery Co.*, L. R. [2 C. P. Div.] 205.)

*Chauncey S. Truax* for respondent. The relation of master and servant existed, and was complete between defendant and Algar. The defendant is, therefore, liable under the doctrine of *respondeat superior.* (Thomp. on Neg. 892, 893; *Blake* v. *Ferris*, 5 N. Y. 48; *Michael* v. *Stanton*, 3 Hun, 462; *Quarman* v. *Burnett*, 2 M. & W. 500; *Gerlach* v. *Edelmeyer*, 15 J. & S. 295; affd., 88 N. Y. 645; *Annett* v. *Foster*, 1 Daly, 507; *Butler* v. *Townsend*, 126 N. Y. 105; *Cosgrove* v. *Ogden*, 49 N. Y. 255; *Crockett* v. *Calvert*, 8 Ind. 127; Story on Agency, §§ 453a, 453b; *Richardson* v. *Van Ness*, 53 Hun, 267; *Jones* v. *Mayor, etc.*, L. R. [14 Q. B. Div.] 890; *Weyant* v. *N. Y. & H. R. R. Co.*, 3 Duer, 360; *Sprowl* v. *Hemmingway*, 14 Pick. 1; *Fletcher* v. *Braddick*, 5 Bos. & Pull. 182.)

O'BRIEN, J. The plaintiff sustained a personal injury on the 7th day of December, 1891, while engaged in using the elevator in defendant's building at the corner of Broadway and Dey street in the city of New York. The negligent act to which the injury is to be attributed was committed by a general servant of the defendant, whose duty it was to manage and operate the elevator.

The question in this case is whether the defendant is responsible under the doctrine of *respondeat superior* for the negligence of its servant under the circumstances of the case. There is practically no dispute with respect to the facts, and, briefly stated, they are these: It seems that some months before the accident the building referred to was injured by fire, and the company entered into a contract with a contractor and builder to restore the building. The contractor, among other things, was to furnish elevators, and they had been

placed in the building some time before the accident. The builder had not, however, yet completed his contract, and had not turned over the elevators to the defendant. They were still, for all practical purposes, the property of the contractor. From the time he first placed them in the building they were subject to his use in carrying materials and workmen from the lower to the upper floors. There can be no doubt that he had the right to use them for that purpose until such time as he should complete his contract and turn the building over to the defendant.

On the day of the accident the plaintiff, a mason or plasterer, was in the service of the contractor, and was directed by him to do some plastering in the elevator shaft. For the purpose of doing this work they used the elevator as a platform, upon which the plaintiff stood. It was necessary to move the elevator up and down to enable the plaintiff to do his work, and the contractor, instead of employing one of his own men for that purpose, found it more convenient and economical to procure a man who was in the employment of the defendant. It should be stated that, although the elevators had not yet been turned over to the defendant, it was, nevertheless, permitted to use them for the purpose of taking passengers up and down during some portions of the day. On the day of the accident the defendant's servant, who had charge of the elevator for the purpose of carrying passengers, suspended that work about noon, and the contractor, during the rest of the day, used the elevator as a platform for the purpose stated.

There is no question in this case with respect to the fact that Algar, the person who took charge of the elevator, and whose negligence caused the accident, was in the general service and pay of the defendant; but the question is whether, at the time of the accident, he was engaged in doing the defendant's work or the work of the contractor. The work of plastering the elevator shaft was that of the contractor. Algar, who was called upon by the contractor to move the elevator while the plaintiff was standing upon it, was not at the

time taking any orders from the defendant. His orders came from the plaintiff, who was in the employ of the contractor, and who directed him to move the elevator up and down, as it became necessary, to enable him to do the work. The hand of Algar that moved the lever which controlled the elevator was directed by the mind and brain of the plaintiff. To hold the elevator steady it was necessary to bring the lever to the center of the guard and put it in a catch To move the elevator up or down the lever was taken from the catch and moved forward or backward accordingly. On the occasion of the accident Algar did not put the lever in the catch, and did not have his hand upon the lever, but was sitting in a chair reading a newspaper. It was this negligence which caused the accident, since, without any instructions from the plaintiff to move the car, and without warning, it started up, throwing him down, with his head between the door and the top of the elevator, inflicting injuries of a somewhat serious character.

The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, and that such person alone is liable. The case of master and servant is an exception to the rule, and the negligence of the servant, while acting within the scope of his employment, is imputable to the master. (*Engel* v. *Eureka Club*, 137 N. Y. 100.) But the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought. to be charged for the result of the wrong, at the time and in respect to the very transaction out of which the injury arose. The fact that the party to whose wrongful or negligent act an injury may be traced was, at the time, in the general employment and pay of another person, does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. Servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction,

and that, too, when their general employer is interested in the work. ( *Wyllie* v. *Palmer*, 137 N. Y. 248.)

In this case, as already observed, the contractor had the right to use the elevator, and for that purpose could have employed his own servants. Instead of doing so he borrowed the defendant's servant, who, for the time being, became the servant of the contractor, engaged in doing his work and subject to his order. He put the elevator and the conductor to a use different from that employed by the defendant. The defendant used the elevator for the purpose of carrying passengers. The contractor was using it as a platform upon which the plaintiff might stand in doing his work. Now, does the fact that Algar, who was guilty of the negligent act that produced the injury, was in the general employ and pay of the defendant, make it liable for the result of this accident? I think not, and for the reason that the conductor, while moving the elevator up and down as directed by the plaintiff, was not engaged in the defendant's work, but in the work of the contractor.

This distinction in the law of master and servant is made quite clear by the decisions in this court. ( *Wyllie* v. *Palmer*, *supra* ; *McInerney* v. *D. & H. C. Co.*, 151 N. Y. 411.)

Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master. And if the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is not to be attributed to the master. Here the relation of master and servant between the conductor of the elevator and the defendant was suspended during the time that he was doing the work of the contractor in moving the plaintiff up and down in the shaft.

I am unable to distinguish this case in principle from the cases in this court already cited ; and the best considered cases in other jurisdictions are to the same effect. ( *Murray* v. *Cur-

*rie*, L. R. [6 Com. Pleas] 26 ; *Rourke* v. *White Moss Colliery Co.* L. R. [2 Com. Pleas. Div.] 205.)   In the latter case Lord COCKBURN stated the rule in these words : " But when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

The true test in such cases is to ascertain who directs the movements of the person committing the injury.   It seems to me that the conductor in this case, whose negligence caused the injury, was not, at the time, engaged in the defendant's work, but in the work of the contractor, under the direction of the plaintiff.   Hence, the decision in this case cannot be sustained without disturbing the rule of law as determined in the cases cited.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur (PARKER, Ch. J., and MARTIN, J., in result), except GRAY and VANN, JJ., not sitting.

Judgment reversed, etc.