J. FRANCIS MURRAY, an Infant, by CATHERINE MURRAY, his Guardian ad Litem, Respondent, *v.* HARVEY A. DWIGHT, Appellant.

1. MASTER AND SERVANT. The mere fact that one person renders some service to another for compensation, expressed or implied, does not necessarily create the legal relation of master and servant.

2. DEFINITION OF "SERVANT." A servant is one who is employed to render personal services to his employer, otherwise than in the pursuit of an independent calling.

3. SPECIAL EMPLOYMENT, OF INDEPENDENT AND QUASI PUBLIC CHARACTER. Where special services are rendered to another by one exercising an independent and *quasi* public employment in the nature of a common carrier, such as a truckman, engaged in hoisting goods from the lower to the upper floor of a building, the latter is not the servant of the person who employs him, and in an action against the employer to recover damages for personal injuries received while rendering such services, and alleged to have been sustained through his negligence, in which it appeared that the negligence complained of was that of defendant's general employees or some of them engaged with the plaintiff in the same work, a nonsuit upon the ground that he was a co-servant with them, is reversible error.

*Murray* v. *Dwight*, 15 App. Div. 241, affirmed.

(Argued December 8, 1899; decided January 9, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

March 15, 1897, reversing a judgment in favor of defendant, entered upon a dismissal of the complaint at a Trial Term, and granting a new trial.

This action was brought to recover damages for a personal injury alleged to have been caused by the negligence of defendant.

The facts, so far as material, as stated in the opinions.

*Randall J. Le Boeuf* for appellant.    The relation of master and servant existed between the defendant and plaintiff at the time and in respect to the very transaction out of which the injury arose.    ( *Wyllie* v. *Palmer*, 137 N. Y. 248 ; *McInerney* v. *D. & H. C. Co.*, 151 N. Y. 411 ; *Higgins* v. *W. U. T. Co.*, 156 N. Y. 75 ; *Murray* v. *Currie*, L. R. [6 C. P.] 26 ; *Rourke* v. *W. M. C. Co.*, L. R. [2 C. P.] 205 ; *Hasty* v. *Sears*, 157 Mass. 123 ; *Powell* v. *Construction Co.*, 88 Tenn. 692.)    The defendant, as plaintiff's master, did not fail in the performance of any duty which he owed to Murray by reason of that relation, and plaintiff could not, therefore, recover.    (*Kimmer* v. *Weber*, 151 N. Y. 422 ; *Sisco* v. *L. & H. R. R. Co.*, 145 N. Y. 296 ; *Perry* v. *Rogers*, 157 N. Y. 251.)    Plaintiff at the time of the injury was a co-servant engaged with the other servants of Dwight in a common employment, and if any negligence other than his own contributed to the injury it was that of a fellow-servant.    (*Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 171.)    The position cannot be taken, under the pleadings or otherwise, that the mere happening of the occurrence was such as to charge the defendant with negligence, or require an explanation on his part.    (*Dobbins* v. *Brown*, 119 N. Y. 188 ; *Clark* v. *Riter*, 39 App. Div. 598 ; *Allen* v. *Banks*, 7 App. Div. 405 ; *Dennenfeld* v. *Baumann*, 40 App. Div. 502.)    Plaintiff was guilty of negligence which contributed to and caused the injury, and for that reason, apart from any other theories of the case, cannot recover.    (*Piper* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 224 ; *Lafflin* v. *B., etc., R. R. Co.*, 106 N. Y. 136.)

*Edwin Countryman* for respondent. The plaintiff was not a fellow-servant with defendant's employees. (1 S. & R. on Neg. [5th ed.] §§ 162, 225 ; *Laugher* v. *Pointer*, 5 B. & Cr. 579 ; *Quarman* v. *Burnett*, 6 M. & W. 497 ; *Jones* v. *Liverpool*, L. R. [14 Q. B. D.] 890 ; *Jones* v. *Scullard*, L. R. [2 Q. B. D. 1898] 565 ; *Michael* v. *Stanton*, 3 Hun, 462 ; *Gerlach* v. *Edelmeyer*, 15 J. & S. 292; *Bradley* v. *N. Y. C. R. R. Co.*, 3 T. & C. 288; *Blake* v. *Ferris*, 5 N. Y. 48 ; *W., etc., R. Co.* v. *Farver*, 111 Ind. 195 ; Story on Agency, 561–565 ; *Huff* v. *Ford*, 126 Mass. 24.) Even assuming that the fellow-servant rule and the *ad hoc* doctrine would apply, had the accident happened during the operation of the work, the defendant cannot claim the benefit of either, as the accident did not occur in the performance of any work with which the plaintiff had any connection whatever. (1 S. & R. on Neg. [5th ed.] 428, § 234 ; *State* v. *M. W. Ry. Co.*, 63 Md. 433.) Plaintiff was free from contributory negligence. (*Dohn* v. *Dawson*, 90 Hun, 271.)

O'Brien, J. The plaintiff, a young man about twenty years of age, received a personal injury from the falling of a pulley block at the defendant's warehouse on the 24th day of March, 1894. The evidence tended to show that the block fell by reason of the negligence of the defendant's general employees, or some of them, and the question presented at the trial was whether the plaintiff was a co-servant with them within the rule that relieves employers from liability in cases of accidents of this character. The trial court held that the plaintiff was a co-servant of the person whose negligence caused the injury, and the complaint was dismissed. On appeal to the Appellate Division this judgment was reversed and a new trial granted, and in this condition the case comes here.

The opinion of the learned court below contains a clear and concise statement of the facts concerning the accident, the substance of which we may safely adopt. The defendant was the owner of a warehouse in which there was a hoisting apparatus for the purpose of hoisting and lowering heavy

articles from one story to another. There is a projection at the roof in which there is an iron wheel over which a chain passes down in front of the building and about a foot and a half therefrom. This chain at the roof passes into the building and around a drum and thence to the back part of the building. An endless rope is attached to the drum, by means of which a man in the building may operate it and hoist or lower the chain outside. If it is desired to use horse power in hoisting, a pulley block is attached to the door post in the lower story and another pulley block with tackle is hooked on the chain and drawn up to the top of the building. A rope connected with the upper block passes down and over the lower pulley and thence into the building, and to this a horse is attached. In operating the tackle the horse moves forward and backward within the building.

The plaintiff was the servant of a truckman and was sent by his master with a horse to hoist at the defendant's warehouse. The goods to be moved from the first to a higher floor in the warehouse were barrels of lime. The plaintiff, on arriving at the warehouse with his horse, stopped near the curbstone in front of the door while other men in the employ of the defendant were putting in place the pulley blocks and tackle. The upper pulley block was hooked on to the chain and was being drawn up to its place by one of the men operating the drum inside. When the block was nearly up the plaintiff was told to go in, and as he started to do so, the block fell upon the plaintiff. He had not worked there before and, as the testimony tended to show, knew nothing about the apparatus for hoisting. He had nothing to do with placing it in position. The horse belonged to the truckman, the plaintiff's master, and the plaintiff was paid by him. The work of moving the barrels of lime from the lower to a higher story was under the direction of the defendant's foreman.

The question when and under what circumstances the servant of a general master becomes the servant of another is often difficult of solution. There is some apparent conflict in the authorities, due more to the difficulty of applying the

legal principle to ever-varying facts than to any discord with respect to the principle itself. Moreover, the rule is subject to some distinctions that are not always easy to state in such a way as to render the result in every case so plain as to command acquiescence, or to give to the decision the character of a conclusive authority. Counsel upon both sides have, in the argument of this case before us, subjected the leading authorities to a very careful and able examination that has thrown so much light upon the question that we have been greatly aided in arriving at what appears to us to be the proper conclusion. We think the judgment of reversal in the court below is correct. The opinion of Judge MERWIN contains such a clear statement of the law as deduced from the numerous cases, and such a judicious application of it to the facts, that we would not attempt to add anything to his reasoning but for the fact that the learned counsel for the defendant has attempted to prove by an argument, which bears all the marks of industry and discrimination, that it is in conflict with two or three recent cases in this court. Before referring to these cases, it may not be amiss to point out a feature of the controversy peculiar to this case and which distinguishes it from many, if not all of those cited.

The relation of master and servant is often confused with some other relation. The mere fact that one person renders some service to another for compensation, expressed or implied, does not necessarily create the legal relation of master and servant. There are many kinds of employment which are peculiar and special, where one person may render service to another without becoming his servant in the legal sense. A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling. The truckman who transports the traveler's baggage or the merchant's goods to the railroad station, though hired and paid for the service by the owner of the baggage or the goods, is not the servant of the person who thus employs him. He is exercising an independent and *quasi* public employment in the nature of a common carrier, and his

customers, whether few or many, are not generally responsible for his negligent or wrongful acts, as they may be for those of other persons in their regular employment ás servants.   A contract, whether express or implied, under which such special jobs are done or such special services rendered, is not that of master and servant within the law of negligence. (*Jackson A. Iron Works* v. *Hurlbut*, 158 N. Y. 34; 1 Parsons on Contracts, 101–109.)

The plaintiff beyond all doubt was in the general service of the truckman and so was his general servant.   In that capacity he represented his master and, hence, was a truckman himself.   In the pursuit of that calling he was directed by his master to render special services to the defendant, not in moving goods from the store or warehouse to a place of shipment, but from the lower floor of the warehouse to an upper floor.   It so happened that in this particular job it was not necessary to use the truck, but it was necessary to use the horse in order to furnish power to hoist the goods.   Neither the time, nor duration of employment, nor the rate of compensation, was the subject of any express contract with the defendant, and from the nature of the case there could not well have been any well-defined agreement on the subject. The employment in its scope and character was in no respect essentially different from that which every truckman enters into with his numerous customers in the course of a day as a carrier of baggage or goods.   The fact that the plaintiff detached the truck and performed the job with a horse alone did not change the character of the employment, nor the legal relation that exists between an ordinary truckman and his customers.   The goods were moved, it is true, not by the truck, but by another contrivance, and the plaintiff's duty was to manage and guide the horse, which was the real power behind the pulleys and tackle, as it would have been when hitched to the truck.   In this capacity the plaintiff represented his general master, the truckman, and was all the time his servant, and did not become in any legal sense the servant of the defendant any more than he would if employed to move

the goods to a railroad station on the truck, and if not such servant he could not, of course, have become the co-servant of the defendant's regular workmen.

The recent cases in this court cited by the learned counsel for the defendant, and to which we will now briefly refer, differ widely from this in the nature of the employment and in the legal relations held by the person guilty of the wrong or negligent act and the party sought to be charged with its consequences.

In *Wyllie* v. *Palmer* (137 N. Y. 248) the defendants sold fireworks to an organized committee in a city for the purpose of a celebration. They agreed to, and did, send to the committee at its own expense a competent man, who was their general servant, to set off these fireworks under the direction of the committee, and this man brought with him a boy, also in the general service of the defendants, as a helper. In the course of the display the committee virtually separated the boy from the control of the man and set him at firing rockets, a work which he was not competent to do and which neither his general master nor the man intended that he should do. One of these rockets was discharged into a crowd through his negligence, and the plaintiff, a bystander, was injured. This court held that if his negligent act was to be imputed to any third party it should be imputed to the committee giving the order to the boy to do something for which he was incompetent, rather than to his general master who was not present and who had sent him there for a different purpose.

In *Higgins* v. *W. U. T. Co.* (156 N. Y. 75) the plaintiff was injured by the negligent act of a person operating an elevator and who was the general servant of the defendant. The plaintiff was the servant of the contractor for the repair of the building, including the furnishing of the elevator itself. The contractor had placed the elevators in the building some time before the accident and they were in use at times by the defendant to carry passengers and by the contractor for purposes of his own. But he had not completed the contract and had not turned over the building, with the elevators, to the defendant.

They were still, for all practical purposes, under the control of the contractor, who had a right to use them for the purpose of carrying materials and workmen from the lower to the higher floors. The plaintiff's master wanted to use the elevator on the day of the accident as a platform upon which to stand while plastering the shaft in which it had been placed, and procured the defendant's general servant to operate it by moving it up and down through the shaft for the convenience of the plaintiff engaged in the work of plastering. The injury to the plaintiff occurred while the elevator was being used for this purpose, and, as the proof tended to show, by the negligent act of the operator. This court held that the operator, at the time of the accident, was not engaged in his general master's work, but was acting under the orders of the plaintiff and in a different capacity. It is apparent, I think, that the plaintiff in that case occupied a different relation to the person moving the elevator than he would had the injury occurred while being conveyed as a passenger in the elevator to his place of duty on an upper floor and while the elevator was being used as a passenger elevator, and while it was in law the defendant's elevator and in charge and control of its servants.

. In *McInerney* v. *D. & H. C. Co.* (151 N. Y. 411) the question that we are now concerned with was not involved, as will be seen by the opinion, which expressly disclaims any intention to deal with the question whether the plaintiff in that case was injured by the act of a fellow-servant. So we think that the case at bar is not governed by these decisions, since there is a material difference in the facts, as we have attempted to point out.

The judgment of the court below should, therefore, be affirmed, and judgment absolute ordered for the plaintiff, with costs.

GRAY, J. (dissenting). While it is true that a variance in the facts of a case of negligence may vary the application of established rules, courts should aim at consistency and, where the facts do not materially differ, apply them strictly. This

case, in my opinion, falls clearly within certain recent authoritative decisions in this state; as it does within recent decisions in Massachusetts and in England.

A general principle of the law of master and servant is that, among the risks which the employé assumes upon entering an employment, is that of injury caused by the negligence of his fellow-servants, engaged in the same employment. Where one servant is injured by the negligence of a fellow-servant, the master, if the negligence was with respect to a duty pertaining to a workman and not to some duty owing from the master, is not liable for the injury. (*Crispin* v. *Babbitt*, 81 N. Y. 522.)

The facts of this case are clear and undisputed. The defendant dealt in building materials and owned two warehouses, into and from which it was frequently necessary that the materials should be hoisted, or lowered. Hoisting tackle, made fast to chains running through the upper part of the warehouses and over a drum within them, was used upon these occasions. The drum was worked by an endless rope in the hands of a man within the building and, as it was made to revolve, caused the chain to descend to the street, or to be pulled up, as it was required. To the end of the chain was attached the hoisting tackle and, when it was necessary to hoist materials, the chain was pulled up and ropes, running over pulleys upon the tackle, fell down and passed over a pulley fastened at the entrance to the warehouse. A horse would be attached to one of the ropes and, as he was driven forwards or backwards, within the basement of the warehouse, the article would be hoisted up, or lowered. A foreman of the defendant supervised the workmen, when engaged in the work of hoisting articles in or out, and it was customary, at the time, to employ a man and horse to aid them. The plaintiff was in the general employment of a truckman, named McManus, who was not usually resorted to by the defendant for this assistance; but, upon this occasion, he was applied to and the plaintiff was sent with a horse, as he says, " to hoist at Dwight's," meaning the defendant. He went to one of

the defendant's warehouses and, under the directions of the
latter's foreman, in common with the other employés upon
the premises, took part in the work of hoisting up barrels of
lime into the lofts, by driving the horse forwards or back-
wards in the basement, as he was bidden.   After the hoisting
was completed at that warehouse, he, with the other men,
went off to do similar work at the other warehouse near by.
Until the hoisting tackle was made fast and the chain drawn
up, preparatory to the hoisting of the barrels, the plaintiff,
instead of going within the building, remained outside, upon
the street and under the tackle.   Owing to the carelessness of
one of the men, who was stationed in the doorway to signal
another man, who was operating the drum through the end-
less rope, the hoisting tackle was allowed to strike with force
against the wheel, or frame, over which the iron chain passed
and, breaking thereby, fell upon and caused the injuries to
the plaintiff for which this action was brought.

I had supposed that the principles of law, which were appli-
cable to the facts of such a case, and which were to determine
the relative rights of the plaintiff and defendant, were well
settled by recent cases and that their doctrine was well applied
by the learned trial judge, when he dismissed the plaintiff's
complaint.   The question is, was the plaintiff, while engaged
with the defendant's servants in doing the work described, for
the time being, in the service of the defendant?   That he was,
and that he was in nowise acting independently in the mat-
ter, or as a stranger to the defendant, seems to me to be a very
plain proposition, in view of what this court and other courts
have laid down as guiding principles.   If I read these cases
right, they sustain the doctrine that one who is the servant of
the general master may, if employed elsewhere temporarily,
*ad hoc,* become the servant of the special master and it is of
no consequence whether he is loaned for the purpose, or
whether he is hired, not directly, but through his general
master.   If the particular employment subjects him to the
directions and orders of another than his general master, he
ceases to be the latter's servant for the time ; whose responsi-

bility for his acts, also, ceases. ( *Wyllie* v. *Palmer*, 137 N. Y. 248 ; *McInerney* v. *D. & H. C. Co.*, 151 *ib.* 411 ; *Higgins* v. *W. U. Tel. Co.*, 156 *ib.* 75 ; *Hasty* v. *Sears*, 157 Mass. 123 ; *Donovan* v. *Laing*, L. R. [1 Q. B. Div. 1893] 629 ; *Rourke* v. *White Moss Colliery Co.*, L. R. [2 C. P. Div.] 205.)   In the case of *Higgins* v. *Western Union Telegraph Company* (*supra*), this court passed upon a state of facts which cannot be distinguished, in the principle of the decision, from those in the case before us.   The telegraph company had contracted with a contractor to restore its building and to replace the elevators within it.   Before the completion of the contract, the contractor was making use of the elevator as a platform upon which the plaintiff, one of his men, might stand in doing some plastering upon the shaft.   It was necessary to move the elevator up and down for the work to be done and the contractor, instead of making use of one of his own men, procured from the defendant one of the men in its regular service for the purpose of running the elevator.   The defendant was using the elevator for the purpose of carrying passengers up and down during portions of the day ; but, on the day of the accident in question, the elevator ceased carrying passengers about noon and after that time was made use of by the contractor for the rest of the day.   The conductor of the elevator was negligent and allowed the car to start up without signal from, or warning to, the plaintiff, who was at work upon it, with the result of causing serious injury to the latter.   The judgment, which the plaintiff had recovered below, was reversed here, upon the theory that the relation of master and servant between the conductor of the elevator and the defendant was suspended during the time he was doing the work for the contractor, in moving the plaintiff up and down in the shaft.   In the opinion, which was delivered by my brother O'BRIEN, who now differs with me in his view of this case, the question of the responsibility of the defendant for the negligence of its servant was carefully considered in the light of the authorities in this state and in England, and the principles there laid down seem to me to be strictly apposite to the discussion here.   It

was observed that there was no question with respect to the fact that the conductor of the elevator, whose negligence caused the accident, was in the general service and pay of the defendant; but the question was whether, at the time of the accident, he was engaged in doing the defendant's work, or the work of the contractor, and that, as he was not at the time taking any orders from the defendant, but was directed by the contractor's servant in moving the elevator up and down, he became the servant of the contractor, engaged for the time being in doing his work and subject to his orders. The general proposition was advanced that servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction and that, too, when their general employer is interested in the work. He quotes the remark of Lord COCKBURN, in *Rourke* v. *White Moss Colliery Co. (supra)*, that, " when one person lends his servant to another for a particular employ-ment, the servant, for anything done in that particular employ-ment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." The conclusion that was reached by Judge O'BRIEN, that the conductor of the elevator had become, at the time, the servant of the contractor, fits exactly the facts of this case; inasmuch as this plaintiff, like the conductor of the elevator, was, for the time being, engaged in the employment of another than his general employer in the common work which was being done and, therefore, was the servant of the defendant. If we apply the test, which was believed in the *Higgins* case to be the true one in such cases, namely: who directs the movements of those who are engaged in the work, we see that the plaintiff was, in the performance of his work, at the time, solely under the direction of the defendant, or his foreman. As cases supporting and justify-ing his conclusions, Judge O'BRIEN, very properly, relied upon *Wyllie* v. *Palmer (supra)* and *McInerney* v. *D. & H. C. Co. (supra)*, which illustrated how the servant of a general employer may be, for a particular employment, the servant of

another and dealt with accordingly. In the *Wyllie* case, the defendants, with whom a contract had been made to furnish fireworks for an exhibition in the city of Auburn, sent with the articles contracted for two of their servants to render aid in the exhibition. An accident occurred, due to the negligence of one of these servants, while obeying an order of a member of the committee having in charge, for the city, the exhibition of the fireworks, and the plaintiff was injured. He sued the contractors to recover for the injury inflicted by their servant's carelessness; but a judgment of nonsuit was affirmed in this court, upon the ground that the plaintiff was not engaged in the defendants' business at the time, but was a servant of the committee. In the *McInerney* case the defendant railroad company had furnished an engine and a crew, which Willard, an owner of a lumber yard, had requested for the purpose of moving cars, which were being loaded in his yard. When they arrived at his yard, Willard assumed direction and ordered the moving of the engine, until the cars were all attached, which were to be moved out. The plaintiff was one of Willard's servants and upon the occasion in question, not having been warned by any one, was caught between two cars and injured, by the backing down of the engine. He brought an action against the railroad company, and a judgment of nonsuit was affirmed in this court, upon the theory that the crew of the engine were under Willard's orders; who was held to be, as to them, as well as to his own men who were engaged in the work, their common master.

If Higgins and the conductor of the elevator were fellow-servants under the contractor, although the telegraph company had merely loaned the conductor, was not this plaintiff quite as much a fellow-servant with the employés of this defendant? If McInerney and the crew of the railroad engine were fellow-servants while doing the work of moving cars in Willard's yard, although the railroad company had furnished its own men to operate the engine, how can it be fairly said that this plaintiff was not a fellow-servant with the defendant's employés?

40

The doctrine laid down by the Supreme Court of Massachusetts, in *Hasty* v. *Sears*, (*supra*), is exactly applicable. There the plaintiff, who was a carpenter in the employ of N. & Co., was sent by them to do some work for the defendant upon his building. The defendant's superintendent directed him to do work upon the elevator shaft. The conductor of the elevator had received orders not to run down below the second floor, until the plaintiff had finished his work. He disobeyed the order and, in consequence, the plaintiff received injuries, for which he sued the defendant, who was the owner of the building. It was held that he and the elevator conductor were both servants of the defendant at the time of the injury and, as their employment was a common employment, the negligence of the conductor was an obvious risk which the plaintiff assumed and for which the defendant was not answerable to him.

The English cases fully recognize the rule that a man may be a general servant of one person and yet, at the same time, be the servant of another in relation to a particular matter. They hold that the important element, in determining whose servant for the time being he is, is, which of the two persons had the control of him in the conduct of the particular business. (*Jones* v. *Scullard*, L. R. [2 Q. B. Div. 1898] 565; *Donovan* v. *Laing*, L. R. [1 Q. B. Div. 1893] 629.) In *Donovan* v. *Laing*, we find a situation which is not to be distinguished from the one in the present case. In that case, Jones & Co. were wharfingers and contracted with the defendants, a construction company, to send their crane, with one of their men to run it, for the purpose of loading a ship at the firm's wharf. When the defendants' crane and man arrived at the wharf, the plaintiff, a servant of Jones & Co., acted in giving signals to set the crane in motion for the purpose of raising and lowering the goods. The defendants' man, without waiting for a signal, negligently allowed the crane to swing around and the plaintiff was injured. It was held, in an action against the defendants, that they were not liable; for they had placed their crane and man at the disposal of

Jones & Company, and had no control over the work he was
to do, and that, in the working of the crane, he was no longer
their servant, but was bound to work under the orders of
Jones & Company. The court relied upon *Rourke* v. *The
Colliery Co.* Lord ESHER, master of the rolls, observed that
" so far as the working of the crane went, the man in charge
was the servant of Jones & Co. and was not the servant of
the defendants." Lords LINDLEY and BOWEN agreed in that
view : the former remarking that Jones & Co. " must for that
particular job be considered as Wand's, (the defendant's serv-
ant), masters," and the latter holding the law to be clear
and pointing out the distinction between the carriage cases,
*Laugher* v. *Pointer* (5 B. & C. 547) and *Quarman* v. *Burnett*
(6 M. & W. 499), and the case at bar ; where the general
master has placed the servant under the control of another.
It was, also, observed by Lord BOWEN that : " We have only
to consider in whose employment the man was at the time
when the acts complained of were done, in this sense, that by
the employer is meant the person who has a right at the
moment to control the doing of the act." Whether, therefore,
we regard the recent authorities in this State, or in Massachu-
setts, or in England, we find the doctrine to be well settled,
that one who is the general servant of a master, who employs
and pays him, may, nevertheless, become the servant of
another in a special employment and that it is immaterial that
he does not enter the special employment by any direct hiring,
or contract. In the *Higgins* case, the telegraph company
loaned its servant to the contractor, and in other cases, from
our and from other courts, payment for the services of the
servants was made to their general master.

The plaintiff in this case was as much in the defendant's
employment and under his direction and orders, as though the
latter has engaged him, individually, to come in and assist in
the work which was to be done in his building. That the
plaintiff was in the general employment of a truckman, hav-
ing an independent business, cannot, possibly, affect the ques-
tion of the relation which he bore towards the defendant,

or the servants of the defendant, when he entered upon the performance of the particular work under the directions of the latter, or his foreman. In all the cases, the existence of the relation of fellow-servants, between the plaintiffs and those from whose negligence their injuries were received, depended upon the sole question of whether, at the time, they were under the direction and control of the temporary employer in performing the special work for which they were loaned, or contracted for. In no essential respect can the position of this plaintiff be regarded as differing, essentially, from that in any one of the cases referred to; where the plaintiffs, though in the service of a general master, were held, for the time being, to become the servants of other masters. Of course, cases of independent contractors, where the contracts of the parties have fixed their relative obligations, including the furnishing of men and defining their duties, are, mostly, inapplicable.

Nor do I consider it to be any answer to the proposition, that the plaintiff was injured by the act of a fellow-servant and, therefore, cannot hold the defendant liable, that, at the particular moment when the accident happened, the plaintiff was not at work. His engagement was "to hoist" at the defendant's warehouses and his employment in that respect was continuous from the time when he reported for duty. The preliminary work of hoisting the tackle, which was necessary to be done at the second building before the plaintiff could go on with his part of the work, was being done by the defendant's servants with whom he was engaged in the same employment, namely: to hoist bags of lime from the street into the upper lofts of the warehouses. He was as much, at the time, under the control and direction of the defendant, or his foreman, as he had been at any time during the day. If the defendant did not direct him to take part in the hoisting up of the tackle, that was a mere matter of the division of labor and it seems to me to be the purest kind of technical reasoning to say that, because at the moment the plaintiff was at rest and not actually driving his horse to and fro, or help-

ing in getting up the tackle, he was, therefore, withdrawn, *pro tanto* from the defendant's employment.

I think that the judgment of nonsuit at the Circuit was correct, and in accordance with the principles of the adjudged cases.

All concur with O'Brien, J., for affirmance, except Parker, Ch. J., not sitting, and Gray, J., who reads dissenting opinion.

Order affirmed, etc.