MINNIE E. HALLETT et al., as Administrators of EDGAR A. HALLETT, Deceased, Appellants, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Hallett* v. *N. Y. C. & H. R. R. R. Co.,* 42 App. Div. 123, reversed.
(Argued January 25, 1901; reargument ordered March 22, 1901; decided May 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 26, 1899, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*George S. Hamlin* for appellants.

*Charles C. Paulding* for respondent.

O'BRIEN, J. On or about the third day of August, 1895, the plaintiff's intestate, a locomotive engineer in the employ of the defendant, was killed by the derailing of a train resulting from an open switch, through which the train passed from

the main track while running at a high rate of speed. There can be no doubt that the negligence of the person who had charge of the switch and left it open was the cause of the accident. The plaintiff was nonsuited at the trial upon the ground that the person in charge of the switch, and to whose negligent act the accident is to be attributed, was a co-servant with the deceased, and the judgment has been affirmed at the Appellate Division. The facts upon which the nonsuit was directed are substantially these: At the time of the accident the Western Union Telegraph Company was engaged in stringing a line of telegraph wires along the defendant's road and that of the Boston and Albany Railroad Company from Albany to New York. The telegraph company had a push car, by which it moved its materials from point to point, placing the car on sidings convenient for the purpose. The work was first done from Albany to Chatham, which is the northerly terminus of this road of the defendant. The foreman of the telegraph company testified that when the working party reached the defendant's road he notified the train dispatcher of the defendant that he was about to commence work, and requested "that a man be detailed to protect the tracks." In pursuance of that request the dispatcher sent to the working party one Miller, who was in the general employ of the defendant as a brakeman, and had served in that capacity for several years. He was paid by the telegraph company during his service with its workmen. He procured the key to the switches, and was the only person who could open or close them. On the occasion of the accident the push car of the telegraph company had been run in on a siding. Miller neglected to close the switch, and the train on which the plaintiff's intestate, the engineer, was, ran into the open switch, collided with a car standing thereon, was derailed and the engineer killed. If Miller, the switchman, was at the time of the accident in the service of the defendant and the co-servant of the deceased, the judgment below is right. If, on the contrary, he was not at that time in the defendant's service, but in the service of the telegraph company, then the nonsuit was improper.

It must be admitted that this case is well on the border line,

but we are inclined to hold that the switch tender, whose negligent act caused the death of the plaintiff's intestate, was not a co-servant of the latter within the meaning of the rule that exempts the master from liability to the servant for personal injuries. The negligent switchman was undoubtedly the general servant of the defendant, but the latter had loaned him to the telegraph company that was engaged in independent operations on the railroad track at the time of the accident. The switchman was then taking his orders, not from the railroad company, but from the telegraph company. He was paid for this work by the latter, and he opened and closed the switches, as it needed that work to carry on its operations of stringing wires and working upon the telegraph line. In opening and closing the switch he was not doing the work of the railroad but that of the telegraph company, as the latter required that act to be done from time to time in order to move the push car whenever and wherever it became necessary. The defendant had permitted the telegraph company to carry on certain work of its own on the railroad track distinct from that of operating the railroad. In order to accomplish what it set about to do the telegraph company was obliged to add to its working force, and it procured from the defendant one or more of the men employed to do work as railroad employees. Miller, so far as it appears, had never been employed by the railroad as a switchman, but had been assigned to other duties. He became the switchman only when the telegraph company needed him for that work, and procured the defendant to send him to it for that work, to act under its own orders and directions, not in operating a railroad but in assisting to repair the telegraph lines. The fact that he had been selected and taken from the employees of the railroad does not prove that he still remained in the service of the defendant, or was not the servant of the telegraph company. Therefore, for the time being, he held the same relations to the telegraph company as the other men engaged in repairing the line. At the time of the accident, therefore, and in respect to the very transaction out of which the injury arose, the switchman was not in the defendant's service, but in the service of the telegraph company that

69

paid him his wages and directed his acts. It is the case of a general servant of the defendant employed for a special and particular purpose by the telegraph company, and so *ad hoc* the servant of the latter. The facts in this case render it somewhat difficult to designate the master of the switchman at the moment he committed the negligent act which resulted in the death of the intestate, but we think it should be held, within the doctrine of recent cases in this court, that he was then in the service of the telegraph company, and hence not the co-servant of the engineer who was killed. (*Murray* v. *Dwight*, 161 N. Y. 301; *Higgins* v. *W. U. T. Co.*, 156 N. Y. 75; *McInerney* v. *D. & H. C. Co.*, 151 N. Y. 411; *Wyllie* v. *Palmer*, 137 N. Y. 248.) Where the person injured and the person guilty of the negligent act from which the injury results are both at the very time and with respect to the very transaction in the service of a common master, no question can arise with respect to the rule that exempts the master from liability. But here the telegraph company, with the defendant's consent, took one of the workmen of the latter to render service in the repair of the telegraph line, which was a different service to be performed under the directions of another master. The relations of this switchman to the other servants of the railroad were thereby changed for the time being and he assumed for the occasion new relations with the servants of the telegraph company. Miller had charge of this switch, not in consequence of the direction or appointment of the defendant, but by reason of the orders and directions of the telegraph company. The telegraph company neeeded a man to perform that service, and the fact that it selected a man who had been in the general employ of the defendant in another capacity, does not change the relations of master and servant as between the switchman and the telegraph company. The defendant gave the use of its track and the control and management of the switch to the telegraph company, and it was when the latter was in charge that the accident happened, in consequence of the neglect to properly manage and guard the switch. That was a duty that the telegraph company assumed for the time being with the consent of the defendant, and Miller was the

agency it employed and paid to perform that duty. He was none the less the servant of the telegraph company when so employed and paid merely because he was selected from the railroad force at the request of the foreman of the telegraph company. The identity of the master at the time of the negligent act charged must always be determined with reference to the particular facts of each case. The facts of this case, while perhaps they render the question one of some doubt and difficulty, I think warrant the conclusion indicated.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BARTLETT, J. This judgment should be reversed, but I cannot assent to the grounds stated in the prevailing opinion. The judgment dismissing the complaint was affirmed by the Appellate Division on the ground that Abraham Miller was a co-servant of the deceased intestate and that the railroad company was, therefore, not liable. It is now proposed to reverse this judgment on the ground that the defendant railroad company had loaned its employee, Abraham Miller, to the Western Union Telegraph Company, and that he is to be regarded as in the employ of the latter company at the time of this accident. A number of cases are cited in support of this view, and among them *McInerney* v. *D. & H. C. Co.* (151 N. Y. 411). In that case the defendant company loaned an engine and its crew to one Willard, a lumber dealer, who had private tracks constructed on his own premises ; while he was engaged in switching cars on said tracks in the prosecution of his business, with the aid of the engine and crew he had thus borrowed, the plaintiff was injured. It was held that the railroad company incurred no liability in such a situation and that the engine and crew were to be treated, for the time being, as belonging to and employed by Willard. It is difficult to see what possible application this and kindred cases have to the one at bar.

The telegraph company, before entering upon the work of stringing wires along the defendant's road, applied to its general train dispatcher to furnish a man " to protect the tracks ; " thereupon Abraham Miller was sent to represent the company

for that purpose. Here was a gang of men in the employ of the telegraph company, engaged in work entirely distinct from that of operating a railroad ; it involved the presence of a car loaded with materials on the main track of the defendant, and it was absolutely essential that the company should detail a representative to protect the running of its trains and the general operation of the road ; in view of this unusual situation Miller cannot be regarded as an ordinary switchman, whose sole duty it was to open and close the switches at various points. It is equally inaccurate to say that Miller was engaged in the work of the telegraph company and subject to the control of its foreman. It may be that when the business of the telegraph company required the car containing the materials to be placed upon the side track for its own purposes, Miller was bound to operate the switch and place the car where requested. This, however, was not his chief duty ; he was called upon to represent the defendant company to "protect the tracks ; " to see to it that the prosecution of the work by the telegraph company did not interfere with the running of trains upon the road and imperil the lives of those operating them ; as to that duty he was the representative of the company ; he alone carried the keys to the switches ; he only knew the running time of the trains, and upon him solely rested the responsibility of regulating the movements of the telegraph company's car so as to enable the defendant company to continue in the discharge of its duty to furnish a safe place in which its engineers and other trainmen might work, as the presence of this alien gang of workmen was neither an ordinary nor obvious risk assumed by an employee. The fact that the telegraph company paid Miller for his time is of no importance. This case is most unusual in its facts and is to be treated as *sui generis*. Miller filled a position which is to be distinguished from that occupied by any other employee of the defendant company ; he was, *quoad hoc*, the sole representative of the defendant.

It follows from these views that Miller was neither a co-servant of the deceased, nor in the employ of the telegraph company, and his negligent act rendered the defendant company liable.

CULLEN, J. (dissenting). The action is brought for damages for the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence under the following circumstances: On August 3rd, 1895, the deceased was in the employ of the defendant as a locomotive engineer. At that time the Western Union Telegraph Company was engaged in stringing a line of telegraph wires along the defendant's road and that of the Boston and Albany Railroad Company from Albany to New York. The telegraph company had a push car by which it moved its materials from point to point, placing the car on sidings convenient for the purpose. The work was first done from Albany to Chatham, which is the northerly terminus of this road of the defendant. The foreman of the telegraph company testified that when the working party reached the defendant's road he notified the train dispatcher of the defendant that he was about to commence work and requested "that a man be detailed to protect the tracks." In pursuance of that request the dispatcher sent to the working party one Miller, who was in the general employ of the defendant as brakeman and had been so for several years. He was paid by the telegraph company during his service with its workmen. He had the key to the switches and was the only person who could open or close them. On the occasion of the accident the push car had been run in on a siding. Miller neglected to close the switch; the train on which the plaintiff's intestate was the engineer ran into the open switch, collided with the car standing thereon, was derailed and the engineer killed. A nonsuit at the Trial Term was affirmed in the Appellate Division by a divided court, a majority of the members holding that Miller, whose negligence caused the accident, was a fellow-servant of the deceased, while the minority were of opinion that he was the servant of the Western Union Telegraph Company.

There can be no question that the negligence which occasioned the injury to the deceased was in the conduct of the work as distinguished from a failure of the master to provide for his servant a safe place to work and safe appliances. There is no claim that the switch was defective; the train was derailed because Miller left the switch open. The opera-

tion of switches along the line of a railroad is a detail of the work of transportation and switchmen and train hands are fellow-servants, and for the injury caused to the one by the negligence of the other the master is not liable. (*Harvey* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 481; *Randall* v. *B. & O. R. R. Co.*, 109 U. S. 478.) Therefore, had the accident occurred in the ordinary operation of the road it would be clear that the defendant was not responsible. It is now to be considered how far this rule of liability is affected by the presence of the push car upon the defendant's railroad. It was not unlawful nor negligent in itself to permit the telegraph company to transport its material along the road on a push car or to place that car upon a siding. Materials for construction or repairs along the line of a road are often transported in that manner. Switches to connect with sidings used wholly for private purposes, such as those leading to coal and lumber yards, to elevators and to factories, are to be found on the line of every railroad and are necessary to afford proper facilities in the transportation of freight. It is conceded that had the defendant by its own servants transported the telegraph company's material on the push car the defendant would not have been responsible for the negligence of any persons engaged in that work. The defendant cannot be liable on the mere ground that the party whose negligent act caused the injury was not its servant. Its liability must result from some fault on its own part. Doubtless it could not suffer its track to be invaded by third parties occupying and obstructing it without control, and so endanger the safety of its employees operating the trains. It was, therefore, incumbent upon the defendant to see that the license or permission which it had given the telegraph company to use its tracks was so exercised as not to create greater danger or hazard to its employees than would result from its own operation of the road. The accident in this case did not occur from the movement of the push car along, or from its presence upon the main tracks of the defendant, but from the failure to close the switch after the car had been placed on the siding. It is true that the use of the push car made it necessary to open the switch to enter the siding, but

the use of the siding as a place for standing cars was a proper one, and the case cannot be differentiated in principle from the use of the siding for defendant's own cars, much less from the use of switches to connect with sidings belonging to private parties. What then was the precise duty of the defendant as to the adjustment of the switches in the present case or in those of private sidings? It was to furnish a competent servant to see that the switches were properly set. If it did so, the negligence of the employee in the operation of the switches was, as to the trainmen on the road, the negligence of a co-servant. If it did not furnish a proper switchman, but suffered the switch to be operated by an employee of third parties, the defendant would be liable, not because the employee was the servant of another master, but because it had failed in its own duty to provide a switchman. There is neither allegation nor proof that Miller was not a competent and proper servant for the work to which he was assigned. So if Miller remained the servant of the defendant during his connection with the work of the telegraph company, the defendant was not liable for the injury done to the plaintiff's intestate. The evidence as to the exact status of Miller is somewhat meagre. But bearing in mind that the burden was on the plaintiff to affirmatively show the misconduct or negligence of the defendant, the result of any insufficiency in the evidence must fall on her. It appears that Miller had been for some years in the general employ of the defendant. On previous occasions when telegraph work was being done along the line of the railroad, he had been assigned to service with the workmen of the telegraph company, and on the termination of the work returned to his ordinary duties with the defendant. The request made by the foreman of the telegraph company of the train dispatcher was, "that a man be detailed to protect the tracks." The foreman testified: "The duties which he (Miller) performed was the turning of switches if it became necessary to turn on the switch; he had keys. He was the only one in the crowd who had keys. He was the only one permitted to turn the switches. When our car was on the main track he was the flagman; he generally flagged ahead and one of my men flagged from behind. He knew of the

time of the approach of trains and guarded against collision between our car and the trains." " Brownie Miller had charge of this supply car, that is, protected it against trains.   *   *   * Brownie Miller was supposed to be the man who had charge of opening the switch upon this track at that time.   *   *   * That was the way the car was driven; it was pushed by the men.   Miller was not one of those men; he usually was ahead with the flag.   He was not always with the car.   He was ahead as a general thing — sometimes behind, whichever would be necessary.   He had control of the men when the car was moving.   It was under his care.   It was under my directions that the car was transferred to the side track.   I gave orders to put the car on the side track.   My orders were the orders to be obeyed in that respect.   Q. You had control of the management of that car, did you not?   A. I did and I did not." We think that the only fair inference from this testimony is that the foreman of the telegraph company had, as necessarily he must have had, general direction as to what points along the line the supply car was to be moved to; but that the actual movement or transportation of the car over the defendant's road and the turning of the switches necessary to put it on the sidings were under the direction of Miller, and in the discharge of this work he was not subject to the control or orders of the telegraph company or its foreman.   Though he was paid by the telegraph company he was not subject to discharge by it.   The terms of the request made by the foreman that the defendant's train dispatcher should detail a man to protect the tracks imply that the man so detailed was to remain the servant of the defendant.   The dispatcher was not asked to recommend any person for employment by the telegraph company.   The evidence does not show what the agreement or arrangement under which the telegraph company entered upon the defendant's road was, except so far as it is to be inferred from the request made of the train dispatcher. The license to the telegraph company to be inferred from this conversation did not authorize the operation of its car over the defendant's tracks, except under the supervision of the employee detailed by the railroad company.   This workman was not selected by the telegraph company.   It is not claimed

that the switch keys could have been taken from Miller or that he could have been controlled in the opening and closing of the switches by the foreman of the telegraph company. It is doubtless the rule that the general servant of one master may, in a particular work, be the servant of another master, so that the latter and not the former is liable for negligence on his part. As is said in Shearman & Redfield on Negligence (§ 160): " He is to be deemed the master who has the supreme choice, control and direction of the servant and whose will the servant represents, not merely in the ultimate result of his work, but in all its details." An example of this rule is to be found in *Wyllie* v. *Palmer* (137 N. Y. 248). But here the details of the work in moving the car were not under the direction of the foreman of the telegraph company, but only the ultimate result, and as also said by the same learned authors (§ 162): " A master who hires out one of his servants to work for another person, is liable to the hirer for such servant's negligence in the work, and this even though the particular servant was selected by the hirer himself, and unless the master abandons the entire control of his servants to the hirer, he remains liable to strangers for their negligence. The hirer cannot properly be said to have control of the servants, unless he has the right to discharge them and employ others in their places in case of their misconduct or incapacity, that being the only practicable means by which free servants can be controlled. If, therefore, the hirer has no such power, he is not responsible to any one for the faults of the servants." This principle has been applied in several cases. (*Coyle* v. *Pierrepont*, 37 Hun, 379 ; *Gerlach* v. *Edelmeyer*, 15 J. & S. 292 ; affirmed, 88 N. Y. 645 ; *Murray* v. *Dwight*, 161 N. Y. 301.) If I am right in the view that the foreman of the telegraph company had no control over the details of the transportation of the supply car, the operation of the switches, nor power to discharge Miller from the work which he was assigned to perform, the latter was the servant of the defendant and not of the telegraph company, despite the fact that he received his pay from the latter company. Such payment was a mere method of reimbursing the defendant for the expense to which it was put by the privilege afforded the telegraph company.

70

The cases cited by the learned counsel for the appellants, as to the liability of a railroad company to its passengers for the negligence of the servants of another company whom it has allowed to use its road, have no application to the present case. The liability of a company to its passengers is wholly different from that to its employees.

The judgment appealed from should be affirmed, with costs.

MARTIN and VANN, JJ. (and BARTLETT, J., in memorandum), concur with O'BRIEN, J., for reversal; PARKER, Ch. J., and WERNER, J., concur with CULLEN, J., for affirmance.

Judgment reversed, etc.