DALZELL v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department.    January 14, 1910.)

1. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR.
   The mere fact that an accident has happened, and that plaintiff charges a particular person with negligence, is not sufficient to place the burden of explaining on such person, but it must be shown that he is in entire control of the operations, machinery, and appliances causing the injury.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 301*)—INJURY TO SERVANT—INDEPENDENT CONTRACTOR.
   A railroad employed an electric company to install an electric system, and gave to it a part of a roundhouse for the housing of its motors, and this part was under the control of the company. The railroad had no control over the movement of the motors in the roundhouse. One in the general employ of the railroad operated motors under the direction of the foreman of the company, and a servant of the company was injured by a motor colliding with a tower car. *Held* that the evidence did not show the liability of the railroad, for the negligence of its servant operating the motor.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1213; Dec. Dig. § 301.*]

3. NEGLIGENCE (§ 56*)—INJURY TO SERVANT—FELLOW SERVANTS.
   An employé of an electric company engaged in installing an electric system on a railroad was injured by a dead motor backed out of a roundhouse under the direction of the company's foreman, and, continuing down the track, colliding with a tower car, instead of following the live motor, when it was reversed, and started on another track. A co-employé testified that he joined the two motors, but did not buckle them up tight. *Held*, that the proximate cause of the accident was the failure to couple the dead motor to the live one because of the failure of the co-employé to properly make the coupling, precluding a recovery from the railroad.
   [Ed. Note.—For other cases; see Negligence, Cent. Dig. §§ 69, 70; Dec. Dig. § 56.*]

   Hirschberg, P. J., dissenting.

Appeal from Trial Term, Westchester County.

Action by George Dalzell against the New York, New Haven & Hartford Railroad Company. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

I. R. Oeland (Nathaniel S. Corwin, on the brief), for appellant.
Michael J. Tierney, for respondent.

WOODWARD, J. This is an action to recover for personal injuries. The plaintiff was employed by the Westinghouse Electric Company, which was engaged in supplying and installing an electric system of transportation for the New York, New Haven & Hartford Railroad Company between Woodlawn and Stamford. At Stamford, in the state of Connecticut, the roundhouse or repair shop of the defendant company had been divided into two sections, and that por-

·tion used for the housing of the electric engines or motors was· given into the control of the Westinghouse Company, which still owned the ·motors, they not having been turned over to the defendant under the ·contract for installation. The evidence was undisputed that the defendant had no control over the movement of the motors or cars in the repair shop; these being in the control of the Westinghouse Com-;pany. On the day of the accident complained of Harry Day, foreman for the Westinghouse Company, desiring to change the position of motors from one track to another in the practical work under way, :gave directions to one McGuire, who is described as a hostler, for the movement. There were two motors standing on the track, one of them known as a "dead motor," for the reason that it was not in ·condition, for some reason, to make use of the electric current in its movements. This dead motor appears to have been nearest the front ·opening of the repair shop, and the live motor was immediately in front of this dead one. The live motor was backed out, and one James O'Brien testifies that he was an employé of the Westinghouse Company, his immediate foreman being Mr. Day, and that he joined· "the two cars together; the electric locomotive together, one of which ·drifted away and struck Dalzell's tower car." On cross-examination he says: "I did not buckle those engines up tight. I did couple them ·together. I did couple them properly." The plaintiff contends that ·these engines or motors were not coupled together, but this testimony ·on the part of O'Brien is not contradicted, and, if they were not coupled, it is certain that he was expected to do this coupling, and that if he did not do it, or if he did it improperly, it was negligence on his part, and not the negligence of this defendant. The live motor, being backed out, supposedly coupled to the dead motor, was backed about 1,000 feet from the repair shop to a switch in the manner ordinarily prevailing, and then the live motor was reversed and started in upon another track. At this time it was discovered that the dead motor, instead of following the live one, had continued on down the ·track, and had collided with a tower car standing upon another track, ·overturning it and throwing the plaintiff to the ground, where he sustained a compound fracture of one of his legs, for which the jury has awarded him a verdict of $10,000.

The case went to the jury upon the theory that McGuire was the servant of the defendant, and that the accident having happened, un-·der circumstances which would not ordinarily happen except for the negligence of some one, it was the duty of the defendant to explain how the accident happened, and that it was for the jury to say whether the explanation was such as to relieve the defendant from the responsibility for the accident. This was squarely charged by the court, and the record does not show that an exception survives, so that it is not necessary to determine here whether the rule of res ipsa loquitur ·should prevail in a case of this character. But, assuming this rule to ·apply, it is necessary always to prove facts and circumstances sufficient ·to show that the defendant is called upon to explain. The mere fact that an accident has happened, and that the plaintiff charges some particular person or corporation with negligence, is not sufficient to ·place the burden of explaining upon such person or corporation. It

must be shown that such party is in entire control of the operations, machinery, and appliances causing the injury, and in this case there is no such evidence. It is true that there is some testimony tending to show that McGuire was in the general employ of the defendant, but there is not a particle of evidence to show that the defendant had any right or authority to move one of these engines in the roundhouse or repair shop, or that McGuire was engaged in the work of the defendant in moving them. On the contrary, the evidence is undisputed that McGuire was operating the engines under the direction of Mr. Day, the foreman in charge of the Westinghouse Company's operations, and that the roundhouse, where these engines were kept, was in so far as these engines were concerned in the entire control of the Westinghouse Company, and that the defendant had no power to direct the movement of cars in the repair shop; such cars or engines being still the property of the Westinghouse Company. Under similar circumstances the Court of Appeals held in Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, that the servant of a defendant, acting for and under the orders of an independent contractor, was not the servant of such master, although receiving his compensation from him. In that case the plaintiff was injured by the negligent act of a person operating an elevator, and who was the general servant of the defendant. The plaintiff in that case, as in this, was the servant of the contractor for the repair of the building, including the furnishing of the elevator itself. The contractor had placed the elevators in the building some time before the accident, and they were in use at times by the defendant to carry passengers and by the contractor for purposes of his own. But he had not completed the contract, and had not turned over the building, with the elevators, to the defendant, just as the plaintiff's employer in this case had not turned over the engines or surrendered control of this portion of the roundhouse to the defendant. They were still, for all practical purposes, under the control of the contractor, who had a right to use them for the purposes of carrying materials and workmen from the lower to the higher floors. The plaintiff's master wanted to use the elevator on the day of the accident as a platform upon which to stand while plastering the shaft in which it had been placed, and procured the defendant's general servant to operate it by moving it up and down through the shaft for the convenience of the plaintiff engaged in the work of plastering. The injury to the plaintiff occurred while the elevator was being used for this purpose, and, as the proof tended to show, by the negligent act of the operator. The court held that the operator, at the time of the accident, was not engaged in his general master's work, but was acting under the orders of the plaintiff and in a different capacity. Commenting on this state of facts, the court in Murray v. Dwight, 161 N. Y. 301, 308, 55 N. E. 901, 903, 48 L. R. A. 673, say:

"It is apparent, I think, that the plaintiff in that case occupied a different relation to the person moving the elevator than he would had the injury occurred while being conveyed as a passenger in the elevator to his place of duty on an upper floor and while the elevator was being used as a passenger elevator, and while it was in law the defendant's elevator and in charge and control of its servants."

If we are right in this position, it was necessary to raise the inference or presumption of negligence on the part of the defendant to show more than the mere fact that he was in the general employ of the defendant. It should have been shown that he was in the discharge of the master's business. The undisputed evidence here is that he was not in the discharge of the defendant's business. He was acting under the directions of the Westinghouse Company's foreman, and the Westinghouse Company was the only one having any power or authority to direct in reference to the movement of these engines, which were still the property of that company. The negligence, therefore, of McGuire, was not the negligence of the defendant, but the negligence of a fellow servant, and this question was raised by the defendant's motion to dismiss the complaint at the close of the evidence.

But we are not convinced that the negligence was that of McGuire. There is no suggestion that there was any fault in the manner in which the live engine was operated. The accident is claimed by the plaintiff to have occurred because the dead engine was not coupled to the live engine, but, if this is the case, the neglect was on the part of O'Brien, who was supposed to have made the coupling, and who declares, without contradiction in the evidence, that he did make the coupling, though he says he did not buckle the engines up tight. Here seems to have been the proximate cause of the accident, and there is no dispute that O'Brien was employed, in common with the plaintiff, by the Westinghouse Company, so that the defendant is not liable for this act of negligence.

We are of opinion that the case was lacking in evidence to show negligence on the part of the defendant, and that for this reason the judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.