(63 App. Div. 257.)

CONNOR v. KOCH et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.
   · Defendant gave up the use of an elevator in his building for the day to a company which was engaged in putting in pipes for a fire extinguisher. While so engaged, a bundle of pipes fell from the elevator, and killed plaintiff's husband. Plaintiff claimed the accident occurred through negligence of the man operating the elevator, who had been in defendant's employ several years. *Held* error to exclude evidence that the man was detached from defendant's employ for that day, and employed and paid by the company putting in the pipes, since in that case defendant was not responsible for his negligence.

2. SAME.
   Where, in carrying long pipes in an elevator, the top was removed, and the pipe extended so that the cage could not reach the level of the top floor, and, when stopped below such floor, a bundle of pipes fell, killing plaintiff's husband, a finding that stopping below such floor was negligence was error.

3. SAME—CHARGE—CONTRIBUTORY NEGLIGENCE.
   Where plaintiff's husband, while on the sidewalk, was killed by a piece of pipe which fell through a window from an elevator, and there was some evidence that he assisted in loading the elevator, an instruction that he was free from negligence was erroneous, the question being for the jury.

4. SAME—INTOXICATION OF EMPLOYES.
   It was error, in an action for the husband's death, to exclude testimony that the company's employés who had charge of loading the elevator were intoxicated.

   Patterson and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by Elizabeth C. Connor, as administratrix of George Connor, deceased, against Henry C. F. Koch and others. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendants appeal. Reversed.

The action is brought to recover for the death of George Connor, which, it is alleged, was caused through the negligence of the appellants and of the General Fire-Extinguisher Company, which was sued jointly with them. On the 7th day of March, 1900, appellants were in possession and occupancy of the building known as "Nos. 132 to 140, inclusive, West 125th Street," in the borough of Manhattan. The nature of their business is not shown. It appears, however, that they entered into a contract with the General Fire-

Extinguisher Company, a domestic corporation, for the purpose of equipping said building with fire-extinguishing apparatus. The iron pipe to be used by the General Fire-Extinguisher Company in the performance of this contract was consigned to it over the Philadelphia & Reading Railroad, and it inclosed the bill of lading to James Reilly & Sons, truckmen, with directions to deliver the pipe at these premises. Decedent and one Walsh were in the employ of the truckmen, and their instructions were to deliver the pipe on the sidewalk, as convenient as possible to the door where it was to be carried into the building. The building extended through to 124th street. The pipe was unloaded from 124th street opposite a freight elevator in the rear of the building. It was a six-story building, and the elevator was located at the southwesterly corner. On the south the elevator opened directly onto the sidewalk. There was a lattice iron gate at this side, which it was customary to close at the noon hour when carrying passengers, but not when carrying freight. The elevator was also open on the east, but the north and west sides were closed. The operating cables were in the southeast corner. By the contract between the appellants and the General Fire-Extinguisher Company it was agreed "that space for materials and facilities for the prose·cution of the work shall be afforded on the premises." One Baumann had been employed for several years to operate this elevator. On the day in question the foreman of the fire-extinguisher company had a conversation with him, which he communicated to his employers, as a result of which he was directed by one of the appellants to give the General Fire-Extinguisher Company the exclusive use of the elevator that day, and not to carry other freight or passengers. On former occasions the extinguisher people had been allowed the use of the elevator at any time, but not the exclusive use, and the elevator man had run the elevator during noon hours and other hours in carrying their freight. Appellants offered to show that on such occasions the fire-extinguisher company paid the elevator man for the extra time, and for all his services in carrying their freight, both on the day in question and at all former times. This evidence was excluded, and the appellants excepted. Evidence was offered tending to show that the extinguisher company, through the request of its foreman, was given the exclusive use of the elevator on the day of the accident, and that Baumann was given permission to run the elevator for the company under an understanding with the foreman that his services were to be paid by it, and that they were in fact subsequently paid by the foreman, although it was conceded appellants made no deduction from his compensation on that account. This evidence was excluded, and appellants excepted. The elevator was operated for the use of the extinguisher company exclusively that day, and the accident occurred about 4:30 p. m. The foreman and two other employés of the extinguisher company were engaged with the truckman in unloading the pipe and carrying it to the elevator. The pipe varied from an inch to six inches in diameter, and that of small diameter was tied in bundles. Some of the pipes were three or four feet too long to go in the elevator. The screen forming the top of the elevator was raised, and tied to the cable in the center, and the long pipes were placed resting on the floor of the elevator, the upper ends extending through the top. One Hamm, also an employé of the fire-extinguisher company, was placing and supervising the placing of these long pipes in the elevator. Those engaged in unloading the truck usually placed the short bundles of pipe in the elevator, one end resting on the floor, and the other against the further side of the elevator, and slanting at an angle of about 45°. At times shorter bundles were placed horizontally on the floor of the elevator. There is a conflict in the evidence as to whether Hamm supervised the placing of these short bundles in the elevator, or whether they were left as placed by the men who brought them from the truck. This was the second or third load of pipe brought by decedent and Walsh. There was evidence that each of them had delivered pipe to Hamm in the elevator, and had placed pipe in the elevator, but the witnesses could not recollect who put the shorter bundles of pipe in place on the elevator at the time of the accident. The load of pipe on the elevator at the time of the accident was destined for the upper floor. On account of some of the pipe projecting three or four feet above the top of the elevator, the floor of the elevator

could not be brought to the level of the upper floor of the building, and it was stopped about three feet below that point. The lower part of each window opposite the elevator was protected on the side of the elevator by a guard screen, but in the position in which the elevator was stopped its floor was above the guard screen of the window on the fifth floor, leaving no protection between the lower part of the elevator and the upper part of the fifth-story window. Baumann remained in the elevator after it stopped; and Hamm, who had ridden up with him, placed one hand on a chain stretched across the east side, drew himself up, and stepped out on the sixth floor, preparatory to unloading. Within a few seconds thereafter, according to some of the evidence, and, according to other testimony, several seconds later, one of the shorter bundles of pipe in some manner fell off the elevator at the rear fifth-story window at the side, striking and killing decedent, who was standing on the walk, talking with the foreman. There is no other evidence showing how the accident occurred, or what caused it. The appellants offered to show that at the time of the accident the employés of the extinguisher company were under the influence of liquor. The evidence was excluded, and appellants excepted. At the close of the plaintiff's case, and at the close of all the evidence, counsel for appellants moved for a dismissal of the complaint on the ground that no neglect on their part was shown, and that Baumann was in the special employment of the General Fire-Extinguisher Company. Each motion was denied and appellants duly excepted. The jury exonerated the latter company. The court charged the jury, as matter of law, that decedent was free from negligence, to which ruling appellants excepted. The court also instructed the jury: "It may be inferred, also, from the proofs, that there was negligence in the employé Baumann, of Koch & Co., in stopping this lift three feet below the floor of the sixth story of the building, where the floor of the lift was adjacent to the unprotected upper sash of the fifth floor of the building. You may find negligence from the fact, also, in regard to the use of the elevator, from the nonuser of the gate which went across one of the open sides; and it is from this evidence, gentlemen of the jury, that you are to fix this liability either upon one or both of these defendants." The appellants duly excepted to each of the two propositions contained in this part of the charge. The court also instructed the jury: "The jury is instructed that there is no proof in this case that the elevator man, Baumann, did or omitted anything in the moving of his elevator on the trip preceding the accident, or in handling the elevator when near the sixth floor, just before the accident, which has been shown by any legal proof to have brought about the accident." The court was requested in behalf of the appellants to charge that: "If the jury believe that the elevator was being used on the day of the accident exclusively by the servants of the General Fire-Extinguisher Company, though the same was in charge of the elevator man employed by the defendant Koch as to its operation, such elevator man was the servant of the General Fire-Extinguisher Company, and not the servant of the defendant Koch, in respect to the trips made by him for the General Fire-Extinguisher Company." Also that "the jury is instructed that at the time of this accident the elevator man, Baumann, while in the general employ of the defendants Koch, was, so far as the work then in progress was concerned, in the employ of the General Fire-Extinguisher Company; and the defendants Koch are not liable for any negligence of his while engaged in such work." The court declined to charge each of these requests, and appellants excepted.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellants.
Frederick L. Taylor, for respondent.

LAUGHLIN, J. There are four grounds upon which the judgment should be reversed, and they will be considered separately.

1. In view of the last proposition charged, quoted in the state-

ment of facts, the evidence on which the jury were permitted to infer negligence on the part of Baumann was slight indeed. It appeared that in the main his back was turned to the loading of the elevator, and his attention was drawn to holding the elevator in place, and to prevent its settling towards the basement while being loaded. The only authority he assumed to exercise over the loading was to see that the load was properly balanced. It was not shown that from the position he occupied he was able to observe how all the pipe or bundles of pipe were placed. But, assuming that there was sufficient evidence of his negligence to take the case to the jury, if his negligence was chargeable to appellants, we think the verdict was against the weight of evidence, and should be set aside.

2. We also think the court erred in allowing the jury to infer that he was negligent in stopping the elevator three feet below the upper floor. Manifestly, it would have been negligence on his part to have attempted to have brought the elevator to a level with the sixth floor, for in so doing the ends of the long pipe projecting above the hood of the elevator would have come in contact with the upper part of the shaft, or the fixed machinery of the elevator.

3. The court also erred in excluding the evidence offered by appellants to show that Baumann had, for the day in question, become detached from their employment, and entered the employ of the fire-extinguisher company, or of its foreman, Murphy. Under their contract with the General Fire-Extinguisher Company, appellants were under no obligation to carry this pipe in their elevator; nor was it their duty, when they consented to allow the use of their elevator for that purpose, to furnish a man to operate it. If the evidence excluded had been admitted, it might have been shown not only that Baumann's services for that day were paid by Murphy or the General Fire-Extinguisher Company, but that he performed no services for appellants, and that at the request of Murphy, or the company he represented, Baumann was permitted and instructed by appellants to act upon the orders of Murphy or his company; and this would have relieved appellants from liability for his negligent acts while so employed. Hallett v. Railroad Co., 167 N. Y. 543, 60 N. E. 653; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901; Kueckel v. Ryder, 54 App. Div. 252, 66 N. Y. Supp. 522; Higgins v. Telegraph Co., 156 N. Y. 75, 50 N. E. 500. The rule that a person lawfully traveling a public highway, and injured by something falling from an adjacent building, may be presumed free from negligence, and that the person having charge of the article which falls is prima facie guilty of negligence (Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870; Dohn v. Dawson, 90 Hun, 271, 35 N. Y. Supp. 984, affirmed in 157 N. Y. 686, 51 N. E. 1090; Hogan v. Railway Co., 149 N. Y. 23, 43 N. E. 403; Loudoun v. Railroad Co., 162 N. Y. 380, 56 N. E. 988; Bishof v. Leahy [Sup.] 66 N. Y. Supp. 342), does not necessarily apply to this case, for here there is some evidence indicating that decedent assisted in loading the elevator, and was in a position to observe the manner in which it was loaded.

4. Upon the last point the evidence offered by appellants to show

that the employés of the General Fire-Extinguisher Company, who had charge of loading the elevator, were under the influence of liquor, was also competent. Cleghorn v. Railroad Co., 56 N. Y. 44; Kingston v. Railway Co. (Mich.) 40 L. R. A. 143, 144, note (s. c. 70 N. W. 315, 74 N. W. 230).

It follows from these considerations that the judgment and order appealed from must be reversed, and a new trial awarded, with costs to appellant to abide the event.

VAN BRUNT, P. J., concurs. INGRAHAM, J., concurs on first ground. PATTERSON and O'BRIEN, JJ., dissent.

---

(35 Misc. Rep. 254.)

### In re NEIL'S ESTATE.

(Surrogate's Court, New York County. June, 1901.)

1. CLAIMS AGAINST DECEDENT'S ESTATE.

    In enforcement of a claim for rent of premises occupied by an intestate, claimant need not show that no payments had been made thereon.

2. SAME—EVIDENCE.

    Where an administrator presents a claim against his intestate, he cannot testify as to payments made to him by the intestate.

3. SAME—LIMITATIONS.

    A tenant held premises under an agreement for a fixed monthly rental, the occupation extending over 16 years, and any balance due the landlord to be payable out of the estate of the tenant at her death. Held, that limitations did not run against such claim until death of the tenant.