(89 App. Div. 33.)

### CONNOR v. KOCH et al.

(Supreme Court, Appellate Division, First Department.    December 11, 1903.)

1. NEGLIGENCE—EVIDENCE—RES IPSA LOQUITUR.

An elevator belonging to defendant and in the charge of its servant was loaded with long iron pipes which projected above the top of the elevator, one end, resting on the floor of the elevator and the upper part in an angle formed by the cross-pieces on the top of the elevator. While the pipes were in this position, and the elevator containing no one but defendant's servant was at rest on a level with a window in the sixth story of the building, one of the pieces of pipe fell from the window, striking plaintiff's decedent, and killing him. *Held* that, as the pipe could not get from its position in the elevator through the window without the intervention of some active agency, and as the only active agent in the elevator was defendant's servant, the facts were sufficient, under the rule of res ipsa loquitur, to justify a finding that defendant was negligent, in the absence of any explanation by defendant.

Appeal from Trial Term, New York County.

Action by Elizabeth C. Connor, as administratrix, against Henry C. F. Koch and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, HATCH, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellants.
Frederick L. Taylor, for respondent.

HATCH, J. In varying phases the substantial facts appearing in the present record have been before this court on two former appeals. Connor v. Koch, 63 App. Div. 257, 71 N. Y. Supp. 836; Connor v. General Fire Extinguisher Co., 73 App. Div. 624, 77 N. Y. Supp. 339, affirmed on appeal, 174 N. Y. 515, 66 N. E. 1106. It is not necessary, therefore, that we state the facts of the case in any great detail. Upon the present record it appears that the elevator man, Baumann, in the management of the elevator and its load, was acting as the servant and agent of the present defendants, and not of the Fire Extinguisher Company, and for his acts and omissions, therefore, the present defendants are responsible. It appears without substantial dispute upon the present record that the elevator was in part loaded with long pipes, which projected above its top, one end resting upon the floor of the elevator on its easterly side, and the upper part resting in the angle formed by the cross-pieces on the top of the elevator. After being loaded, the elevator was run to a point about three feet below the sixth floor, where it was stopped for the reason that its farther ascent might bring the projecting ends of the long pipes in contact with the hood of the elevator, which had been suspended in the elevator shaft. Baumann and one Hamm, the latter a servant of the Fire Extinguisher Company, were upon the elevator at the time when it came to rest. As the men upon that floor were not present, Hamm drew himself up through the door on the sixth floor for the purpose of notifying them to come and unload the elevator. At this time the pipes upon the elevator were in the same position that they occupied when the elevator started with its load, and no displacement of them

took place during the time that Hamm was there; nor did he hear anything of any change until after the accident had happened. At the time he left the elevator, Baumann, the operator, stood between the long pipes and the south side of the elevator, directly opposite the window in the building upon that floor, and he was then the only person upon the elevator. While he was in this position, the long pipes fell through the window on the south side of the elevator, struck the deceased, who was upon the sidewalk, and caused his death.

It is evident that these pipes could not get from their position on the easterly side of the elevator to the southerly side, and crash through the window, without the intervention of some active agency, and the only active agent then upon the elevator was Baumann, its operator. He might have taken hold of the pipes to assist in their unloading, and swung them around so as to be opposite the window, and, losing control, permitted their descent to the ground; or they might have been displaced and thrown to the south by attempting to run the elevator farther up, bringing the upper ends in contact with the hood, and so displacing them. It is not necessary, however, that we speculate upon such subject. We have the fact clearly established that the long pipes fell from the elevator, passed through the window, and came in contact with the deceased, causing his death. Under these circumstances the deceased is to be regarded as occupying the same relation to the defendants as would any other person lawfully upon the street in the place where the pipes fell. He was engaged in making use of the walk for a lawful purpose, and was therefore entitled to the protection which the law affords to persons so situated. As the pipes fell from the defendants' structure while in charge of their servant, the doctrine of res ipsa loquitur applies; a presumption that defendants were guilty of negligence which caused the fall arose, and the defendants were called upon to explain the cause of the fall, and to show that they were not guilty of any negligence in permitting the pipes to fall. Hogan v. Man. R. Co., 149 N. Y. 23, 43 N. E. 403; Volkmar v. M. R. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; Loudoun v. Eighth Ave. R. R. Co., 162 N. Y. 380, 56 N. E. 988. This court, upon the former appeal in this case, held that the doctrine of res ipsa loquitur did not necessarily apply, for the reason that there was present some evidence indicating that the decedent assisted in loading the elevator, and was in a position to observe the manner in which it was loaded, and that the accident might have resulted from such improper loading. In the present case it is made affirmatively to appear that the deceased took no part in loading the elevator. He simply removed the pipes from the truck, and other persons placed them upon the elevator; and there is no evidence that they were improperly loaded, except as such inference might be derived from their having fallen. Such inference, however, is scarcely permissible in view of the fact that it is undisputed that the pipes retained their position upon the elevator up to the time it came to a stop about three feet below the sixth floor. There is, therefore, nothing in the present case tending to show, either by inference or otherwise, that the deceased was in any wise responsible for the loading of the elevator, or the handling of the load, or any other act which contributed

to the fall of the pipes. The further proof upon this subject is by a person who heard the pipes crash through the window, saw them strike the deceased, and at about the same time saw the ends of some other pipes projecting through the window, which did not. fall, and were almost immediately removed. It seems clear, therefore, that the duty was devolved upon the defendants of satisfactorily explaining the cause of this accident, and exonerating themselves from the charge of negligence. This they have failed to do, either through their servant, Baumann, or otherwise. The verdict of the jury therefore finds support in the evidence; and must be upheld. In this view of the case the charge of the learned court was correct.

The judgment and order should therefore be affirmed, with costs. All concur.

INGRAHAM, J. I concur upon the ground that the plaintiff's intestate, being in a public street, and injured by an object falling from the premises in possession of the defendant, while under the exclusive control of an employé of the defendant, justifies the application of the maxim res ipsa loquitur, and there was therefore presented a question as to defendant's negligence for the jury.