CARRIE HARRINGTON, as Administratrix, etc., of WILLIAM BEST, Deceased, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

*Negligence — injury to an employee of a foundry company on its land, on which a railroad company has laid tracks and upon which an engine entered, striking cars thereon which ran over the employee — the employee was not a fellow-servant of the engine crew — charge as to the absence of a flagman and a failure to give any signal.*

In an action to recover damages for the alleged negligent killing of the plaintiff's intestate, it appeared that the intestate was an assistant shipping clerk in

the employ of a foundry company located adjacent to the line of the defendant's railroad; that, pursuant to an arrangement with the foundry company, which was a large shipper, the defendant had constructed or superintended the construction, upon the foundry company's premises, of a number of switches which connected with the defendant's tracks; that the foundry company maintained an engine for shifting cars about its yards, and that it was customary for the engine of one of the defendant's trains to run into such yard each working day and to take out such cars as were ready for shipment; that on the day of the accident the engine of this train entered the company's premises for the purpose of taking out a number of cars which had been standing upon the main switch for a number of hours; that it gave no signal of its approach and struck the cars with such violence as to shove them over a temporary plank crossing which had been constructed by the foundry company over the switch track, killing the plaintiff's intestate, who was then in the act of passing over the crossing.

It appeared that the plaintiff's intestate was a man of good habits, fifty-seven years of age, who had good eyesight and good hearing; that before attempting to cross the track he looked in the direction from which the defendant's engine was approaching; that from the point where the intestate approached the track he could only see a short distance in that direction.

*Held*, that a judgment in favor of the plaintiff, entered upon the verdict of a jury, should be affirmed;

That the mere fact that the defendant was upon the premises of the foundry company under a license for the purpose of discharging its duties as a common carrier to the foundry company did not make the latter company the employer of the defendant's servants for any purpose and that the plaintiff's intestate was, consequently, not a fellow-servant of the defendant's engine crew;

That, upon the evidence, the question whether the plaintiff's intestate was guilty of contributory negligence was properly submitted to the jury;

That, while it would have been improper for the court to charge that it was the defendant's duty to station a flagman at the temporary crossing, it was proper for the plaintiff to show that no flagman was, in fact, stationed at the crossing and that no signals were given, in order that the jury might have before it the real situation under which the defendant was operating its engine, so that it might determine whether such operation, under all the circumstances, constituted negligence.

APPEAL by the defendant, the Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rockland on the 23d day of November, 1901, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 12th day of November, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Henry Bacon* [*Joseph Merritt* with him on the brief], for the appellant.

*Arthur S. Tompkins,* for the respondent.

WOODWARD, J. :

Damages for the alleged negligent killing of plaintiff's intestate are sought to be recovered in this action. It is conceded that William Best, plaintiff's intestate, received the injuries resulting in his death at the time and place alleged in the complaint, and that the defendant is a domestic corporation. The determination of the questions of fact submitted to the jury were supported by sufficient evidence, but the defendant urges upon this appeal that it was not, in law, liable for the death of Mr. Best, and that the trial court erred in submitting these questions.

The first point urged by the defendant is that there can be no liability for negligence unless the defendant owed some duty of care which it has either failed or omitted to perform; that it owed no such duty under the circumstances. William Best, plaintiff's intestate, was employed by the Ramapo Foundry Company, which had, in June, 1900, established a plant adjacent to the right of way of the defendant between Suffern and Mahwah, N. J. When this plant was constructed the defendant railroad company made arrangements with the Ramapo Company, by which the former constructed or superintended the construction of an elaborate system of switches in the yards of the latter, connecting with the defendant's main line. The Ramapo Company appears to have been a large shipper. It had its own dummy engine for shifting cars about its grounds, and it was customary for the engine of what was known as the "Pick Up" train, which ran every work day between Port Jervis and Jersey City, to cut loose from the train and run upon the switch at the Ramapo Company's works, and to take out such cars as had been filled and sealed, ready for shipment. On the 15th day of July, 1901, the "Pick Up" train arrived at the works at about three o'clock in the afternoon (it being liable to appear at any time from eleven o'clock in the morning to late in the afternoon), and its engine entered the grounds for the purpose of picking up some freight cars which had been previously loaded and placed upon the main switch by the Ramapo Company. The Ramapo Company was at the time

engaged in constructing new buildings on the opposite side of the main switch from its original office and machine shop, and had constructed a plank crossing to enable its employees to wheel loads over the track, etc., and this condition appears to have existed for some time, and to have been familiar to the crew of the " Pick Up " train. As was the custom, the cars which were to be picked up had been placed upon the main switch, the last car standing near this plank crossing, which was near a temporary platform used for mixing concrete. On the day in question plaintiff's intestate, who was employed as an assistant shipping clerk by the Ramapo Company, was engaged in his work, and while crossing the main switch at the plank crossing the engine from the " Pick Up " train backed against the cars upon the switch, for the purpose of making a coupling; the cars were shoved violently over the crossing and plaintiff's intestate was knocked down and received injuries from which he died soon afterward. The defendant insists that, under the rule recognized in *McInerney* v. *Delaware & Hudson Canal Co.* (151 N. Y. 411), it is not liable; that the crew of the " Pick Up " train while upon the Ramapo Company's grounds, using its tracks, was in the employ of the Ramapo Company, and that plaintiff's intestate was a fellow-servant, and can, therefore, have no claim upon the defendant. We think this case is clearly distinguishable from the *McInerney* case; in that case Willard was the master and the plaintiff was in his employ; the track belonged to Willard and was built upon his property; the engine crew of the defendant came upon Willard's track at his request to perform a service for him, and during the time they were thus engaged, acting under his orders and subject to his control, they were, in law, his servants. (*McInerney* v. *Delaware & Hudson Canal Co., supra.*) In the case at bar, while the tracks may have belonged to the Ramapo Company, the switch upon which this accident occurred was there for the purpose of a feeder to the freight business of the defendant, and the crew of the " Pick Up " train while there, it may be at the request of the Ramapo Company for the purpose of taking the freight, were still in the employ of the defendant, for they were picking up the freight for which the Ramapo Company or the consignee was to compensate the defendant. The mere fact that the defendant was upon the premises of the Ramapo Company under a

license for the purpose of discharging its duties as a common carrier to the Ramapo Company, did not make that company the employer of the defendant's servants for any purpose. BARTLETT, J., who wrote in the *McInerney* case, says in a concurring opinion in *Hallett* v. *N. Y. C. & H. R. R. R. Co.* (167 N. Y. 543, 547) that "In that case the defendant company loaned an engine and its crew to one Willard, a lumber dealer, who had private tracks constructed on his own premises; while he was engaged in switching cars on said tracks in the prosecution of his business, with the aid of the engine and crew he had thus borrowed, the plaintiff was injured. It was held that the railroad company incurred no liability in such a situation, and that the engine and crew were to be treated, for the time being, as belonging to and employed by Willard." But here the defendant's crew were not loaned to the Ramapo Company; they were on the premises of the latter, it is true, but they were there for the same purpose that they had been at other places where freight was accumulated, for the purpose of performing the defendant's duty as a common carrier, and the defendant, while in the discharge of that duty, could not be absolved from the duty of using reasonable care not to injure those who were upon the premises. The plaintiff's intestate was not a fellow-servant with the crew of the defendant who were temporarily upon the premises of the Ramapo Company, and the doctrine of the *McInerney* case has no application to the facts here presented.

It is urged likewise that there is a lack of evidence to support the finding of the jury that the plaintiff's intestate was free from contributory negligence. It appeared from the evidence of an eyewitness that plaintiff's intestate, before stepping upon the track, looked in the direction from which the engine of the defendant was approaching, and then walked upon the track at this crossing, and that when about half-way across the engine struck the cars, pushing them violently along, and plaintiff's intestate was knocked down and run over, resulting in his death. There was evidence in the case, from those who were in a position to know, that no bell or whistle was sounded or other warning given of the fact that the engine was approaching. There was also evidence that from the point where the plaintiff's intestate approached the track he could see only a short distance in the direction from which the engine

must have been approaching; and, while there was a conflict on these points, there was enough evidence to warrant the jury in finding for the plaintiff. Taking all of the circumstances, and bearing in mind that these detached cars had stood upon this switch for a period of several hours, it cannot be said as a matter of law that the deceased, a man of good habits, fifty-seven years of age, of good eye-sight and good hearing, was guilty of contributory negligence in stepping upon the track after looking in the direction from which the engine must come, where there was nothing to indicate to him that these cars were more likely to move than had been the case for hours before. We think this was clearly a matter for the jury.

Taking this view of the question, and holding, as we do, that plaintiff's intestate was not a fellow-servant of the defendant's crew, we do not find error in the charge, or in the refusals to charge, made by the learned court. The rule was clearly set forth that the defendant owed to the plaintiff's intestate the duty of exercising reasonable care under all of the circumstances disclosed, and although there was a very persistent effort, through a great variety of requests, to involve the court in a different proposition, or one which should embrace reversible error, we find no reason to apprehend that the jury retired with anything other than a correct understanding of the law of this case.

It is quite true that if the learned court had charged the jury that there was a duty resting upon the defendant to have a flagman at this temporary crossing, it would have constituted error, but nothing of the kind occurred. It was proper, however, to show that there was no flagman, and that no signals were given, that the jury might have before it the real situation under which the defendant was operating its engine, so that it might determine whether such operation, under all of the circumstances, constituted negligence, and this was the view taken by the learned court upon the trial, and it was so stated to the jury. A railroad company is not bound to station a flagman at every crossing, or, indeed, in the absence of statute or ordinance, at any crossing, and negligence cannot be predicated upon such omission. The fact may, however, be proven as one of the circumstances under which the train was moved, and by which the degree of care requisite in its handling

and running may be affected; so that the question never is whether there should have been a flagman, or one ought to have been stationed at the crossing, but whether, in view of his presence or absence, the train was moved with prudence or negligence. (*Houghkirk* v. *President, etc., D. & H. C. Co.,* 92 N. Y. 219, 227.) That is, if there had been a flagman at this crossing the defendant might, in the judgment of the jury, approach the same with less of warning than would be necessary where there was no flagman; the learned trial court carefully pointed out this distinction, and the jury having found the facts in accord with plaintiff's theory of the case, and these being supported by the evidence, the judgment should not be disturbed.

The judgment and order appealed from should be affirmed, with costs.

Present — GOODRICH, P. J., BARTLETT, WOODWARD, HIRSCHBERG and JENKS, JJ.

Judgment and order unanimously affirmed, with costs.