BASSI v. ORTH et al.

(Supreme Court, Trial Term, New York County.   March 10, 1908.)

1. MASTER AND SERVANT—RELATION OF PARTIES.
   If a master lends his servant to another for a particular employment, the servant, for anything done in that employment, is the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1213, 1214.]

2. SAME—AUTHORITY OF BOOKKEEPER.
   Where a master does not instruct any of his servants to assist a truckman who delivers goods at his shop in unloading his truck, it is not within the scope of the authority of the master's assistant bookkeeper to direct a servant to assist the truckman.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1217–1225.]

3. SAME—ACTIONS—EVIDENCE.
   In an action against a master to recover for injuries from the act of his servant, evidence examined, and *held* to show that the servant at the time was not engaged in the master's work.

Action by Augustino Bassi, as administrator of the estate of Teanne Bassi, against Frederich Orth and Patrick McAvoy. Verdict for plaintiff, and defendant Orth moves for new trial. Granted.

Appell & Taylor (Albert J. Appell and George H. Taylor, of counsel), for the defendant Orth and the motion.

Thomas J. O'Neil (Andrew Byrne, of counsel), opposed.

GIEGERICH, J.   The action to recover damages resulting from the death of the plaintiff's intestate, which it is claimed was caused by the defendant's negligence.   The complaint alleges that on December 29, 1905, at No. 181 Prince street, New York City, the servants of the defendants so carelessly and negligently conducted themselves in reference to the unloading and management of a box of copper from a truck as to cause such box to fall upon the body of the plaintiff's intestate, by reason of which she sustained injuries which caused her death.   The defendant Patrick McAvoy died on October 13, 1906, and as to him the action abated, but the cause was tried upon the issues raised by the answer of the defendant Orth.   It appears from the evidence that, when the accident happened, the defendant McAvoy was delivering to the defendant Orth, at his place of business, No. 181 Prince street, borough of

Manhattan, a box containing sheet copper. The box was about 9 feet long, 30 inches wide, and 2 inches thick, and weighed between 500 and 700 pounds. It had been purchased by the defendant Orth of Hendricks Bros., manufacturers of copper in the city of New York. The defendant Orth was at the time of the accident a coppersmith and a customer of said Hendricks Bros., who employed the defendant McAvoy to do their trucking. The defendant Orth's place of business was on the northerly side of Prince street, and on the day in question the defendant McAvoy, after driving his two-horse truck containing the copper along the northerly curb and parallel thereto, with his horses facing east, had an interview with the assistant bookkeeper of the defendant Orth during the latter's absence from his place of business. In the course of the conversation McAvoy stated that he had a load of copper for Mr. Orth, and asked for some help to unload the truck, whereupon the assistant bookkeeper directed four of the defendant Orth's employés "to give the driver (McAvoy) a help to unload his truck." Thereupon two of the workmen went upon the truck, while the other two remained in the street at the rear of the truck, in order, as claimed, to keep the space within which the box would fall clear, and to give warning of its fall. The case containing the copper was then pushed to the tail end of the truck by the men on the truck, including the defendant McAvoy, and unloaded in such a way that it stood up in the street on the narrow side or edge, leaning against the truck. It is claimed by the defendant that the signal agreed upon was then given and the box was pushed over by the men on the truck, and, while it was in the act of falling, the plaintiff's intestate, a little girl of the age of seven years and seven months, rushed from a fruit stand on the north side of the street against or under the falling box and was caught and received injuries which proved to be fatal.

The rule applicable to the situation thus described is stated by Lord Cockburn in Rourke v. White Moss Colliery Co., L. R. 2 Com. Pleas Div. 205, in these words:

"But, when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

The Court of Appeals, in Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 80, 50 N. E. 500, 502, 66 Am. St. Rep. 537, after quoting the foregoing language, said:

"The true test in such cases is to ascertain who directs the movements of the person committing the injury."

All of the defendant's witnesses testified that the driver, the defendant McAvoy, was on the truck with the two workmen, giving directions to them as to the manner of unloading the truck and assisting them in such work. While it is true that August Chichiccola, a witness called by the plaintiff, testified that the driver was standing on the truck near the horses, holding the lines, it would appear from a reading of his testimony that the person he saw was

not McAvoy, because he (the witness) testified that three men were upon the truck engaged in unloading it. The last part of his testimony accords entirely with that of the defendants' witnesses, all of whom said that three men, including the driver, were in the rear of the truck when the accident happened. Cæsar De Bono, the other witness to the accident who was called by the plaintiff, testified that he did not know exactly where the driver was, that he saw two men push the box when it was "standing that way," and that he saw another man "by the side there," and that he thought it was the driver. This witness further testified that he did not know which of the three men was the driver. Such testimony plainly shows that the defendant McAvoy was on the truck with the defendant Orth's workmen when the accident occurred, and it must fairly be inferred from the testimony of all the witnesses that he was there directing the movements of the workmen and giving instructions to them as to the manner of unloading the box.

The evidence fails to disclose that the defendant Orth was under any obligation to assist the defendant McAvoy, the truckman of Hendricks Bros., in the delivery to him of copper purchased by him of them. Moreover, the defendant Orth testified that he did not at any time instruct any of his employés to assist McAvoy in unloading his truck when the latter delivered copper at his place of business. In such circumstances, if the defendant Orth's assistant bookkeeper saw fit to accede to the request of McAvoy for assistance in unloading the truck by placing at the latter's disposal the services of his employer's workmen, it was clearly an act not within the scope of his authority. Assuming, however, but without deciding, that the act of lending the defendant Orth's workmen to McAvoy was within the assistant bookkeeper's authority, the defendant Orth is not liable for the alleged negligence of such workmen in unloading the truck. Although the latter were in the defendant Orth's general employ and pay, they nevertheless, while so assisting in the unloading of the truck, were not engaged in the work of the defendant Orth, but of McAvoy, who exclusively directed their movements.

For the foregoing reasons, as well as for others urged in support of the motion, but not discussed by me, the verdict should be set aside, and a new trial granted.