We conclude that the order appealed from should be affirmed upon the ground that the matter which it is sought to strike out of the third paragraph of the answer was not, under the circumstances, irrelevant and scandalous. But, as the order appealed from is not sustained upon the ground on which it was made, the order should be affirmed without costs of this appeal to either party.

Order affirmed, without costs. All concur.

---

## CASEY v. DAVIS & FURBER MACH. CO.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

MASTER AND SERVANT (§ 301*)—NEGLIGENCE OF SERVANT—RELATIONSHIP.

Defendant contracted to furnish decedent's employer, the C. Mills, a carding machine, and to send a man to set it up, defendant to pay his wages and the mills his expenses. Defendant sent C. to set up the machine, and directed him not to set up feeds for the machine unless sold by defendant. On C.'s arrival the mill foreman asked him to put on a feed not sold by defendant, which he agreed to do, if the mills would furnish him a second man to help him in setting up the carding machine, so he would lose no time in putting it on. This was done, and while C. was putting on the feed he negligently dropped an iron ball connected with the appliance, which fell through an opening in the floor, and struck plaintiff's decedent, an operative of the mills working on the floor below, resulting in injuries from which she died. *Held,* that C. while so engaged was not an employé of the defendant, but of the C. Mills, and that defendant was therefore not responsible for his negligence while so engaged.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

Spring, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by John J. Casey, as administrator of Anna L. Casey, deceased, against the Davis & Furber Machine Company. From a judgment for plaintiff for $4,174.54, and from an order denying defendant's motion to set aside the verdict and grant a new trial, it appeals. Reversed.

See, also, 121 N. Y. Supp. 1127.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Louis L. Waters, for appellant.
Frank C. Sargent, for respondent.

KRUSE, J. The plaintiff's intestate was hit by an iron ball carelessly permitted to be dropped by one Clow, falling upon her head and injuring her. The ball is used in connection with a machine or appliance known as a "feed," which Clow was setting up. She was an employé of the Crown Mills, working on the floor below the one where the feed was being set up. The ball fell through an opening in the floor. She brought the action in her lifetime to recover damages against the defendant, claiming that Clow was acting within the scope

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of defendant's employment, and that the defendant is chargeable with Clow's negligence. She died, and her administrator, the present plaintiff, was substituted. The plaintiff had a verdict, and the defendant appeals.

I think the relation of master and servant did not exist between the defendant and Clow as regards the work in connection with which it is claimed Clow was careless. The defendant had nothing to do with furnishing or setting up the feed. Under the contract between the defendant and the Crown Mills, the defendant agreed to furnish a carding machine, and to send a man to set it up, the defendant to pay his wages and the Crown Mills his expenses. While the defendant attempted to show that it was customary for Clow, when setting up defendant's carding machines, also to set up feeds furnished by others, that claim was finally abandoned by the plaintiff, and the trial court charged the jury, at the request of the defendant, and with the consent of plaintiff's counsel, that there was no proof of any such custom; and the fact is undisputed that Clow had specific instructions from the defendant not to set up feeds except when sold by the defendant. While it was the right and perhaps the duty of the defendant to test the carding machine after it was set up, Clow, who was called as a witness by the plaintiff, finally admitted that the carding machine could be tested without the feed, and that fact is fairly established by the evidence, although it may have been more practicable to use the feed in making the test. But, even if necessary to set up the feed to test the carding machine, I fail to see how the defendant can be made liable for the careless act in question, any more than it could if Clow had assisted in doing work in installing the engine or any other part of the machinery necessary to furnish the power or operate the carding machine, but not connected with the setting up of the machine.

The arrangement under which Clow set up the feed was practically an exchange of work. The carder foreman of the Crown Mills asked Clow to put on the feed. Clow replied that he would do so if he would give him a second man to do top work, so that he would lose no time in putting it on; and the feed was set up after the men had helped him do his work in setting up the carding machine. As Clow testified:

"And they furnished men to help me in return for putting this feed on for them. * * *"

Or, as he finally left it upon redirect examination:

"And in view of the fact that the men helped me by shortening my work, I put it on for them. That is it. That is the way I came to put it on."

Assuming that Clow had authority to make such an arrangement, it is not clear even then that the defendant would be liable for the careless act of Clow committed while setting up the feed. Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Hallett v. N. Y. C. & H. R. R. R. Co., 167 N. Y. 543, 60 N. E. 653; Samuelian v. American Tool & Machine Co., 168 Mass. 12, 46 N. E. 98. But, as has been seen, the work of setting up the feed was done by Clow at the request of the Crown Mills, and without the knowledge or consent of the defendant and against its positive instruc-

tions. In doing that work he was under the control and direction of the Crown Mills, not the defendant. The Crown Mills could tell him what to do and how to do it, although undoubtedly his superior knowledge and skill was relied upon. The mere fact that he was in the general employ and pay of the defendant does not make the defendant liable for his carelessness. It must be shown that the relation of master and servant existed between the defendant and Clow at the time and in respect of the work in connection with which the negligent act of Clow was committed, in order to charge the defendant with the harm done to the injured person as the result of such carelessness. In Wyllie v. Palmer et al., 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, the following statement from Sherman & Redfield on Negligence is quoted with approval:

"Servants who are employed and paid by one person may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, where their general employer is interested in the work. They may, without consulting their master, but in good faith, assist a person independently employed to do something which shall benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other person. In none of these cases is the nominal master responsible to strangers for their acts or omissions."

I am unable to see how any liability is established against the defendant. The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur, except SPRING, J., who dissents in an opinion.

SPRING, J. (dissenting). By the contract between the parties the carding machine must be tested by defendant's agent. Clow testified that it could not be tested or operated without a feed. This question was put to him:

"With a carding machine such as you were putting in the factory of the Crown Mills upon the 17th day of January, 1907, in order to know how it would operate to run, it was necessary to put a feed on it first? A. Yes."

There was evidence to the contrary, and that question of fact was submitted to the jury, and has been decided adversely to the defendant. Clow, therefore, while engaged in his master's business of setting up the machine, comprehended the necessity of attaching the feed, and consequently made the connection. In doing so he was performing his duty to his employer to install the machine and leave it in working shape. That he departed from the instructions generally given him by his employer does not relieve the latter from liability to the plaintiff.

Deviation by a servant from the master's instructions does not of itself exonerate the master from responsibility for the servant's acts. The test is: Was the employé engaged in the prosecution of his employer's business? Cox Shoe Mfg. Co. v. Gorsline, 63 App. Div. 517, 520, 71 N. Y. Supp. 619; Tierney v. Syracuse, B. & N. Y. R. R. Co., 85 Hun, 146, 152, 32 N. Y. Supp. 627, affirmed on opinion below 155 N. Y. 642, 49 N. E. 1105; Cosgrove v. Ogden, 49 N. Y. 255, 10 Am. Rep. 361; Quinn v. Power, 87 N. Y. 535, 537, 41 Am. Rep. 392. Clow knew that the hole was uncovered. He was using a wrench

and other implements in connecting the feed, which was a machine 3 feet in length and 14 or 15 inches wide, weighing 300 or 400 pounds, made of iron and wood. He called the attention of the superintendent of the Crown Mills Company to the danger of leaving this opening. Underneath the hole was a heavy pulley, and any implement which fell through the opening would strike the pulley, and the impact would be likely to deflect it among the weavers at work in the room below. The iron ball which had been loosely adjusted to the traveler of all implements might be expected to roll in this aperture as it did.

The accident does not come within those extraordinary unforeseen occurrences which could not reasonably be anticipated or guarded against. Clow did foresee just what occurred, and it was very easy to have closed or protected the opening against the ball or any implement falling through it. Reasonable prudence and foresight should have suggested this precaution.

The judgment should be affirmed.